## ABNER MITCHELL *et al.*

*v.*

## ARCHIBALD McDOUGALL.

1. RESCISSION OF CONTRACT *for fraud—general rule.* On the principles of equity and justice, a contract to be obligatory must be justly and fairly made. The contracting parties are bound to deal honestly and act in good faith with each other. There should be a reciprocity of candor and fairness.

2. SAME—*false representations.* A false representation by the vendor which influences the conduct of the other party, and induces him to make the purchase, will vitiate and avoid the contract. And in making the representation it is immaterial whether he knows it to be false or not, for the consequences are the same to the vendee. If he relies on the truth of the declaration, he is equally imposed on and injured, and ought to have redress from the one who has been the cause of the injury.

3. SAME—*suppressio veri.* The undue concealment, which amounts to a fraud, for which a court of equity will grant relief, is the non-disclosure of those facts and circumstances which one party is under some legal or equitable obligation to communicate to the other, and which the latter has a right, not merely *in foro conscientiæ*, but *juris et de jure* to know. Under such circumstances the concealment of an important fact would be improper and unjust; it would be an undue concealment on account of the fiduciary relation existing; but, where the parties, in the absence of any such relation,

are treating for an estate, and the purchaser knows from surface indications, or otherwise, there is a valuable mine upon the land, he is not bound to disclose that fact to the owner; for the means of information on the subject are as accessible to the one as to the other. The concealment of facts of which the other party is ignorant, must be by a party who is under some special obligation, by confidence reposed, or otherwise, to communicate them truly and fairly, to justify a court of equity in taking cognizance.

4. SAME—*suggestio falsi.* In this case the plaintiff and defendant made an exchange of property, the plaintiff conveying to defendant a lot and residence in the city of Bloomington, which he valued at five thousand five hundred dollars, for one hundred and sixty acres of land, and a lot and a half in the town of Montevallo, all in Missouri, which was conveyed by defendant to plaintiff. The defendant assumed an incumbrance of one thousand dollars on the Bloomington property, and gave his note for three hundred dollars, difference in the exchange. The plaintiff had never seen the Missouri property, while defendant was well acquainted with it. Plaintiff was induced to make the exchange solely upon the representations of defendant; that the land was good land, and the same occupied by Judge Smith before the rebellion, and improved by him; that the land was worth twenty dollars an acre; and that there was a house a story and a half high on the lots, worth one thousand dollars, which was a desirable residence, renting for eight dollars per month. The land conveyed was not the Smith farm ; was stony, poorly timbered, and comparatively worthless, and had been purchased by defendant a short time before for four dollars an acre. The Smith farm was worth probably fifteen dollars an acre. The house in Montevallo proved to be a mere shell, one story high, occupied by hogs and goats, unfit for human abode, and not worth over two hundred and fifty dollars. As soon as plaintiff discovered the facts, he demanded of defendant a rescission of the contract and a reconveyance of his property, and made a tender of deed for Missouri property and defendant's note of three hundred dollars. On refusal he filed his bill for rescission, and pending the suit the house was burned, the defendant having insured same at three thousand dollars. The circuit court dismissed the bill : *Held*, that the court erred in dismissing the bill on the facts of the case ; and that as the plaintiff made the contract wholly on the representations of defendant, which proved to be untrue, and did not receive the property he contracted for, he was entitled to have the contract rescinded.

5. MISTAKE. In such case the defendant admitted there was a mistake in his conveyance of the Missouri land in not describing the Smith land, and offered to correct his deed so as to convey in fact the Smith farm, and insisted that a mistake in his conveyance was no ground of rescission ; but it was held, in view of the fraud practiced upon the plaintiff, it would be unjust to allow the defendant to correct the mistake, and thus retain the contract as made ; and that, under the circumstances of the case, the plaintiff had a right to take advantage of such mistake and repudiate the entire contract.

6. RESCISSION *for fraud—evidence.* On bill filed to set aside a deed given for land in exchange for other lands, on the ground that the contract was induced by false representations of the location, quality, and value of the lands taken in exchange, the defendant offered to prove that the property conveyed by him was equal in value to the property conveyed by the complainant. *Held,* that the proof was irrelevant, the question in such case being whether the complainant received in exchange what he bargained for and had a right to expect from the representations upon which he relied in ignorance of the facts.

7. RESCISSION—*disposition of insurance on loss by fire.* Where the purchaser of real estate had made an addition to the buildings thereon, and effected an insurance on the whole, and pending a bill by his grantor to rescind for fraud, the buildings were consumed by fire, when the insurance company was made a party by supplemental bill, it was held that a court of equity, in decreeing a rescission, would place the parties in *statu quo* as far as possible; and that, as the insurance money represented the buildings destroyed, it was proper, after deducting the premiums paid by the defendant, and the cost of the addition, to require the company to pay the balance of the insurance money to the complainant.

8. WITNESS—*competency of wife.* Where the husband, being the owner of property which was his homestead, exchanged the same for Missouri lands, taking a conveyance therefor to his wife, and afterward united with his wife in a bill for rescission on the ground of false representations, and on the hearing offered to prove, by his wife, the representations of the defendant, which the court refused to allow: *Held,* that the court ruled correctly, as the suit was not the case of the wife in any correct legal sense.

APPEAL from the Circuit Court of McLean County; the Hon. THOMAS F. TIPTON, Judge, presiding.

This was a bill in chancery, by Abner Mitchell and wife, to rescind a conveyance of real estate, in the city of Bloomington, made by them to defendant in exchange for certain lands and town lots in the State of Missouri, which defendant conveyed to plaintiff's wife, on the ground of misrepresentation and fraud. Pending the bill, the buildings on the Bloomington property were destroyed by fire, defendant having effected an insurance thereon for $3,000. This fact was shown by a supplemental bill making the insurance company defendant. At the time of the exchange there was an incumbrance of $1,000 on the Bloomington property, which defendant assumed. He also

gave Mitchell his note for $300, difference in the exchange.
After his purchase he made an addition to the buildings con-
veyed to him which were embraced in his insurance.   On the
hearing, Mitchell offered his wife as a witness to prove the rep-
resentations made by defendant as to the condition, quality,
and value of the Missouri property, which the court refused to
permit.   The court, on the hearing, dismissed the bill. ·

Mr. R. E. WILLIAMS, for the appellants.

Messrs. BENJAMIN & WELDON, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

In *Lockridge* v. *Foster*, Adm'r, 4 Scam. 569, which was a
bill in chancery praying, in the alternative, for the rescission
of an executed contract for the sale of land, on the ground of
fraudulent representations by the vendor, this court said, on
the principles of equity and justice, a contract, to be obligatory, ·
must be justly and fairly made.   The contracting parties are
bound to deal honestly, and act in good faith with each other.
There should be a reciprocity of candor and fairness.   Both
should have equal knowledge concerning the subject-matter of
the contract; especially ought all the facts and circumstances
which are likely to influence their action to be made known.
If they have not mutually this knowledge, nor the same means
of obtaining it, it is then a duty incumbent on the one having
the superior information to disclose it to the other.   In mak-
ing the disclosure, he is bound to act in good faith and with a
strict regard to truth.   If he makes false representations re-
specting material facts, or intentionally conceals or suppresses
them, he acts fraudulently, and renders himself responsible for
the consequences which may result.   Fraud may consist as well
in a *suppressio veri* as in a *suggestio falsi*, for, in either case, it
may operate to the injury of the innocent party.   A false rep-
resentation by the vendor, which influences the conduct of the
other party, and induces him to make the purchase, will vitiate

and avoid the contract. And in making the representation, it is immaterial whether he knows it to be false or not, for the consequences are the same to the vendee. If he relies on the truth of the declaration, he is equally imposed on and injured, and ought to have redress from the one who has been the cause of the injury. So a suppression or concealment by the vendor of facts, which, if known to the vendee, would have the effect to prevent him from making the purchase, will, in equity, equally vitiate the contract. A court of equity will not enforce and carry into effect contracts thus unfairly and fraudulently made; and when the injured party invokes its aid in proper time, and the circumstances of the case will permit it to be done, the contract will be rescinded and the parties restored to their original rights.

The court refers to 1 Story's Eq., §§ 191, 197, 204, 207, and 2 Kent's Com. 482, 490.

Sections 191 to 197, inclusive, treat of false suggestions, and fully support the doctrine of the case cited, on that point. Sections 204 to 207, inclusive, treat of the doctrine of *suppressio veri,* a doctrine which, though true in morals, is not the doctrine recognized by courts of equity, except under certain circumstances.

The extreme doctrine of some courts is, that undue concealment of a fact resting in the knowledge of one contracting party, which, if known to the other, would have prevented the contract, will vitiate the contract.

The true definition is found in section 207, *supra,* where it is said undue concealment which amounts to a fraud in the sense of a court of equity, and for which it will grant relief, is the non-disclosure of those facts and circumstances which one party is under some legal or equitable obligation to communicate to the other, and which the latter has a right, not merely *in foro conscientiæ,* but *juris et de jure,* to know.

Under such circumstances, the concealment of an important fact would be improper and unjust; it would be an undue concealment on account of the fiduciary relation existing; but where two parties, in the absence of any such relation, are

treating for an estate, and the purchaser knows, from surface indications, or otherwise, by actual boring, there is a valuable mine upon the land, the purchaser is not bound to disclose that fact to the owner, for the means of information on the subject were as accessible to the owner of the land as to the purchaser.

The rule stated by Chancellor Kent, at page 482, referred to in the opinion in 4 Scam., *supra,* is that each party is bound to communicate to the other his knowledge of the material facts, provided he knows the other to be ignorant of them, and they be not open and naked, or equally within the reach of his observation.

This, we admit, is a rule of moral obligation, but not enforced in the courts. It is by them qualified, as we have stated above, that the party in possession of the facts must be under some special obligation, by confidence reposed, or otherwise, to communicate them truly and fairly, and this is the doctrine of this court in the case of *Fish* v. *Cleland,* 33 Ill. 243, and *Cleland* v. *Fish,* 43 id. 282, referred to by appellee's counsel.

It is qualified by *Beach* v. *Sheldon,* 14 Barb. 72; *Laidlaw* v. *Organ,* 2 Wharton, 178; *Knitzing* v. *McElrath,* 5 Penn. St., 467.

In *Fox* v. *Mackeath,* 2 Brown's Ch. R. 400, Thurlow, Lord Chancellor, in delivering the opinion in the case where undue concealment of an important fact was charged, said: "The doubt I have is, whether this case affords facts from which principles arise to set aside this transaction, which will not, by necessary application, draw other cases into hazard. And, without insisting upon technical morality, I don't agree with those who say, that where an advantage has been taken in a contract, which a man of delicacy would not have taken, it must be set aside. Suppose, for instance, that A, knowing there to be a mine in the estate of B, of which he knew B was ignorant, should enter into a contract to purchase the estate of B for the price of the estate without considering the mine, could the court set it aside? Why not, since B was not apprized of the mine and A was? Because B, as the buyer, was

not obliged, from the nature of the contract, to make the discovery. It is, therefore, essentially necessary, in order to set aside the transaction, not only that a great advantage should be taken, but it must arise from some obligation in the party to make the discovery." Not, as Justice Story says, § 148, 1 Story Eq., from an obligation in point of morals only, but of legal duty. In such a case he says, a court of equity will not correct the contract merely because a man of nice morals and honor would not have entered into it. Lord Eldon, in *Turner* v. *Harvey*, Jacob R. 178, approved the doctrine of Lord Thurlow and the illustration of the mine, and so does Justice Story in § 207, 1 Eq. Jur.

But we are dealing in this case with the doctrine of *suggestio falsi* and not of *suppressio veri*, as the charge in the bill is, false representations made by appellee of the value of the land and lots in Missouri.

There is much testimony in the record, from which we derive the knowledge that appellee represented to appellant, who had never been in Missouri (appellee having resided there before coming to Bloomington), that the land was good land, and was the land occupied by one Judge Smith, before the rebellion, and improved by him. This land was the south part of section eighteen and the north part of section twenty-four, in all one hundred and sixty acres, and was worth, probably, fifteen dollars per acre. The land conveyed was in section fifteen, stony, poorly timbered, and comparatively worthless. The house in Montevallo, instead of being a desirable residence, and worth one thousand dollars, as represented by appellee, proved to be a mere shell, one story high, occupied by hogs and goats, bringing not eight dollars a month rent " right along," as represented, but unfit for human abode, and worth, with the "lot and a half," not over two hundred and fifty dollars, and, as we should judge, not at all saleable. So soon as appellant, by personal inspection on a visit to the locality, discovered the facts, he came to the conclusion appellee had imposed upon him, and at once, on his return to Bloomington, demanded a rescission of the contract and a reconveyance of

the Bloomington property, and tendering deeds for the Missouri property, together with appellee's note for three hundred dollars, part of the purchase money. This being refused by appellee, this bill was filed by appellants, and pending the bill the house was consumed by fire, on which, however, appellee had effected an insurance of three thousand dollars.

The court dismissed the bill and complainants appealed.

There is no question of law made except the one we have discussed, and there is some conflict in the testimony, but a careful examination of it, as we find it in the record, satisfies us appellant has not received from appellee what he contracted for, and which contract he made wholly on the representations of appellee, which have proved to be untrue.

It is said by appellee, there was a mistake in conveying the land as in section fifteen—that he supposed the "Smith farm" was on that section, but is willing and offers to convey the land in fact occupied by Smith in sections eighteen and twenty-four, and he insists, that a mistake being made is no ground for the rescission of the contract, as the court can and will correct the mistake. But this consideration should not prevail in this case, because appellee represented the land he was selling to be worth twenty dollars per acre, which he had purchased but a short time previously for four dollars per acre, and he asserted to appellant that such land was selling for twenty dollars an acre in that neighborhood. This he based upon a letter said to have been received by him from one Selsor, a land agent in that county. Selsor in his deposition says, the lands he referred to in that letter were among the best improved farms in that portion of Cedar and Vernon Counties; he says he had no idea of fixing the price of raw lands by these figures, and did not suppose any one would be so foolish as to attempt it.

That letter, which appellee says was burnt up in the building when it was destroyed, was to this effect: "We have sold within the last two weeks ten thousand dollars worth of land, from fifteen to twenty-five dollars an acre." This

was so construed by appellee to appellant as to induce the latter to believe they were lands in the neighborhood of those he was about to purchase.

The town property was of small value. Now, under such circumstances, it would not be just to allow appellee to correct the mistake in the land and claim the contract as made, but it would be just, as a mistake was made by appellee in the deed, to permit the injured party to avail of it, and, through that, repudiate the entire contract. In a case where false representations have been made, it is the province of a court of equity, if applied to for that purpose, to rescind the contract, putting the parties in *statu quo*.

It is claimed by appellee that the Bloomington property was taken at a very high valuation, and that he ought to be permitted to show that appellant has received from him its full value.

This we do not consider as the question before us. The question is, did appellant get what he bargained for? That he did not we think the evidence satisfactorily shows.

Appellant's right to the insurance money will hardly be questioned, as the building upon the lot when sold, is now represented by that money, and after deducting the premium paid by appellee and the cost of the addition to the building which he erected, and was covered by the insurance, we are of opinion the company should pay the balance to appellant.

On the point that Mrs. Mitchell, appellant's wife, was improperly rejected as a witness, we think the court ruled correctly ; the case was in no correct legal sense her own case.

The views here expressed reverse the decree of the circuit court dismissing the bill. The cause is remanded for further proceedings consistent with this opinion.

*Decree reversed.*

SCOTT, J., did not hear the argument in this case, and gave no opinion.