Christine Marbach, et al., Plaintiffs-Appellees, v. Frank Gnadl, et al., Citizens Insurance Company of New Jersey, a Corporation, Insurance Company of North America, a Corporation, and United States Fidelity and Guaranty Company, a Corporation, Defendants. Frank Gnadl and Lieselotte Gnadl, Defendants-Appellants.

Gen. No. 50,247.

First District, Fourth Division.

July 22, 1966.

Maxfield Weisbrod, of Chicago, for appellants.

Doyle, Berdelle & Tarpey and Jerome H. Torshen, of Chicago (Jerome H. Torshen, of counsel), for appellees.

MR. JUSTICE McCORMICK delivered the opinion of the court.

The defendants, Frank Gnadl and Lieselotte Gnadl, have appealed from a decree of the Circuit Court of Cook County finding that the plaintiffs, Glenn Marbach and Christine Marbach, as contract vendors of certain improved real estate, were entitled to a lien upon the proceeds of various fire insurance policies. The policies were held in defendants' names only and the proceeds of the policies represented amounts due as a result of fire damage to property covered by contract of sale between the plaintiffs and the defendants.

From the record the following facts appear to be undisputed: The plaintiffs were owners of a tract of land located in Cook County, Illinois, upon which a $30,000 building was located. On November 15, 1959, plaintiffs entered into a written contract with the defendants for the sale of these premises. The consideration to be paid by the purchasers was $35,000, of which $5,000 was paid on the execution of the contract and $500 per month was to paid thereafter; taxes were to be paid by the purchaser. In the contract the defendants agreed "as additional security to keep all buildings on aforesaid premises insured in such company or companies as the said party of the first part may direct for at least the sum of unpaid balance of purchase price." The terms of the contract with reference to the down payment were complied with and the defendants entered into possession of the subject premises.

On about May 11, 1958, Christine Marbach had obtained fire insurance coverage of $15,000 for five years on the building from Insurance Company of North America. On November 19, 1959, at the time of the sale of the subject property, Christine Marbach assigned this

policy, by endorsement on the policy, to Frank Gnadl. All subsequent annual premiums were to be paid by the defendants. Thereafter, the Gnadls insured the building by additional policies of fire insurance issued by United States Fidelity and Guaranty Company and Citizens Insurance Company of New Jersey, each policy for five years with $10,000 coverage. These policies, together with the policy from the Insurance Company of North America, gave the insured protection totaling $35,000. The Gnadls retained possession of these policies and were named therein as the sole insureds. On about July 8, 1962, while the Gnadls were in possession of the premises, the building was considerably damaged by fire (the insureds maintain the damage was about $16,000, while the insurance companies contend that the damage did not exceed $7,500). No payment whatsoever was made by the insurance companies on the policies of insurance. The defendants afterwards defaulted in their payments, and on or about September 18, 1962, plaintiffs filed with the Recorder of Cook County a declaration of forfeiture, in accordance with the terms of the contract.

On October 17, 1962, the Marbachs, as plaintiffs, filed a complaint against Frank Gnadl and Lieselotte Gnadl, defendants. The complaint was originally in two counts. In the first count it was alleged that the plaintiffs and defendants had entered into articles of agreement for the purchase of certain described property; that the defendants had failed to make the payments and had failed to pay the real estate taxes as provided in the said agreement; that on September 18, 1962, the plaintiffs filed with the Recorder a declaration of forfeiture; that copies of the agreement and the declaration of forfeiture were annexed to the complaint; and that plaintiffs pray that the interest of defendants be declared null and void and be vacated and set aside as a cloud upon the title of the plaintiffs. An answer was filed by the Gnadls to Count I of the complaint, in which answer they admit

that they failed to make the payments provided for in the purchase contract. Count II of the complaint will be discussed later.

On January 6, 1964, the Circuit Court of Cook County entered an order which set forth the fact that the parties had entered into the contract for the sale of the described real estate, and that the plaintiffs had filed their declaration of forfeiture; the order stated that the answer of the defendants to Count I of the complaint admitted that if the agreement for warranty deed should be determined and adjudged to be duly forfeited and determined because of the declaration of forfeiture, then the defendants would have no right, title or interest in and to the said parcel of improved real estate. The court also found that the "said written contract is hereby declared null and void, and that said written contract does not constitute and is not a cloud upon the right, title and interest of said plaintiffs in and to said parcel of improved real estate." From this order of the court no appeal is taken and it will not be discussed in the opinion except incidentally.

On October 10, 1963, the Marbachs filed an amended Count II, complaining of the defendants, Citizens Insurance Company of New Jersey, Insurance Company of North America, and United States Fidelity and Guaranty Company. The amended Count II set out, among other things, that the plaintiffs owned a certain described tract of land upon which was a building of the value in excess of $30,000; that articles of agreement for a warranty deed were entered into between the Marbachs and the Gnadls on November 15, 1959, and that the Gnadls took possession of the property under the terms of the contract; that there was a provision in the contract by which the Gnadls agreed, as additional security, to keep all buildings on the premises insured "in such company or companies as the party of the first part may direct for at least the sum of the unpaid balance of the purchase

price," and that the Gnadls did insure the building in the three previously mentioned insurance companies; that the policies of insurance were obtained pursuant to the terms of the contract as additional security; that the Gnadls at the time of the issuance of the policies had an insurable interest in the property; that on July 8, 1962, the property was "destroyed by fire and damaged" to the extent of $16,000; that subsequently the Gnadls defaulted on the contract, and on September 18, 1962, a declaration of forfeiture was filed with the Recorder; that subsequent to the destruction of the property and the default of the Gnadls the plaintiffs gave notice to the three insurance companies of their interest in the property and of the declaration of forfeiture filed; that all conditions of the policies of insurance have been complied with and proofs of loss have been furnished to the defendants; that the Gnadls have failed to make payments agreed on in the contract of purchase and have refused to assign to the plaintiffs the policies of insurance which were taken out as additional security for the unpaid balance of the purchase price; that the defendants have failed and refused to pay the amounts due under the said policies of insurance, either to the plaintiffs or to the Gnadls; and further, "That by reason of the above the plaintiffs charge that they became and are entitled, in equity, to a lien upon the proceeds of said policies of insurance to the extent of the unpaid balance of the purchase price."

The Gnadls, by leave of court, filed an intervening petition to amended Count II of the complaint, which was also treated as an answer. They also filed a counterclaim against the three insurance companies. The insurance companies filed an answer to the Gnadls' counterclaim and an answer to amended Count II of the complaint, in which they deny that the building had a value of $30,000; admit that they issued their policies of insurance on the building; admit that the policies were issued in the name of the Gnadls and did not name the plaintiffs as additional

307

insureds; admit that on or about July 8, 1962, a fire occurred in the building, but deny that the damage was in the sum of $16,000; admit that subsequent to the fire the plaintiffs gave notice to the three insurance company defendants of plaintiffs' interest in the property and of the filing of the declaration of forfeiture. The insurance companies further say that neither the Gnadls nor the plaintiffs are entitled to any payment under the provisions of the policies, and they deny that the plaintiffs are entitled to an equitable lien upon the policies.

The Gnadls filed a reply to the joint answer of the counterdefendants—the three insurance companies—and in their intervening petition to amended Count II of the complaint the Gnadls admit that there was an agreement in the original contract that insurance should be taken out by the Gnadls, but they say that the Marbachs did not at any time request that they procure such insurance. The Gnadls allege that they were the sole named insured in the policies of insurance, and that the plaintiffs have no right, title or interest in the said policies. They further say that, the contract having been forfeited by the plaintiffs, the obligations and duties under the provisions of said contract became null and void; they state that all the conditions of the policies have been complied with, but that the compliance was on the part of the Gnadls, and that the plaintiffs failed to file any proofs of loss inasmuch as they had no right, title or interest under the policies of insurance. The Gnadls admit that the insurance companies have failed to pay the insurance, and they also set out the order of January 6, 1964, where the court declared the contract to be null and void. They state that the policy issued by the Insurance Company of North America was originally issued to Christine Marbach and assigned by her, at the time of the making of the contract, to Frank Gnadl. They allege that the plaintiffs filed an amendment to the complaint designated as Count III; that the Gnadls filed motions to strike Count III,

308

which was stricken by the court on January 6, 1964, and that the order provided that as to that count the Gnadls go hence without day. They allege that that order was an adjudication that the plaintiffs have "no right, title or interest in all or any of said policies of insurance or of the proceeds thereof."

On November 10, 1964, the court entered an order on the motion of the Gnadls for judgment on the pleadings, and in that order the court stated:

"This matter coming on to be heard on the motion of FRANK GNADL and LIESELOTTE GNADL for Judgment on the pleadings, and the Court having considered said motion and having set this entire cause down for hearing for an adjudication on the issue of whether the plaintiffs are entitled to a lien upon the proceeds of the insurance policies issued by the defendants, and the Court having considered all the pleadings herein, including the Complaint and Answer, the Counterclaim and Answer to the Counterclaim, and the Intervening Petition filed by FRANK GNADL and LIESELOTTE GNADL, and the parties having stipulated and agreed that the sole issue is whether the Declaration of Forfeiture filed by the plaintiffs herein extinguished any and all rights which the plaintiffs had in and to the policies of insurance issued by the defendants, and the Court having heard arguments by counsel for each of the respective parties and being fully advised in the premises:

"The court hereby expressly finds that the plaintiffs' rights in and to the proceeds of the policies of insurance issued by the defendants were not extinguished by the plaintiffs' filing of a Declaration of Forfeiture, which Declaration declared the contract between the plaintiffs and FRANK and LIESELOTTE GNADL, dated November 15, 1959, to be null and void.

"The Court further finds that by reason of the facts set forth in the pleadings and the arguments made by the respective counsels, the plaintiffs are entitled to a lien upon the proceeds of the policies of insurance issued by the defendants, to the extent of the unpaid balance of the purchase price under the contract for the sale of real estate executed by and between the plaintiffs and FRANK and LIESE-LOTTE GNADL.

"IT IS, THEREFORE, HEREBY ORDERED, ADJUDGED AND DECREED that the plaintiffs are entitled to a lien upon the proceeds of the policies of insurance issued by the defendants and described in the Complaint and Counterclaim filed herein, and that said policies of insurance be and hereby are impressed with a lien in favor of the plaintiffs to the extent of the unpaid balance of the purchase price under the aforementioned contract between the plaintiffs and FRANK and LIESELOTTE GNADL, and that the balance, if any, of whatever proceeds may be due and owing under said policies of insurance be then payable to FRANK and LIESELOTTE GNADL.

"And the Court further finds no just reason to delay an appeal herefrom."

The Gnadls filed a notice of appeal from that order of the court. No notice of appeal was filed by any of the three insurance companies, nor are they concerned with this appeal.

Here the Gnadls urge that the Marbachs waived the requirement in the agreement that the defendants provide fire insurance; that by the decretal order finding and adjudicating the agreement for the warranty deed to be null and void, the plaintiff was barred of any of his rights to enforce the agreement for any provisions thereof; and that, the trial court having sustained de-

310

fendants' motion to strike Count III, the adjudication is res adjudicata of any right or demand of plaintiffs to enforce the said agreement because of the breach of its provisions. The Gnadls state that paragraph 9 of the agreement contained a provision that the plaintiffs had the option to forfeit and terminate the agreement and, the plaintiffs having exercised such option by their declaration of forfeiture, became bound by the further provision in the contract that all payments made by the defendants should be retained by the plaintiffs in full satisfaction and liquidation of all damages by them sustained, and thereby plaintiffs could have no other further or additional claim or cause of action against these defendants; and that the court erred in finding that the plaintiffs were entitled to an equitable lien upon the proceeds of all the policies of insurance.

Under the contract entered into between the Marbachs and the Gnadls, the Marbachs agreed that they would sell a certain described tract of land to the defendants. It was further provided that a certain down payment should be made and the balance should be paid by designated installments, and as additional security the Gnadls should take out insurance on the building for "at least the sum of unpaid balance of purchase price." The Gnadls did take out insurance on the building in their own name, apparently in accordance with the intention expressed in the contract, and this is further indicated by the fact that the Marbachs had a policy of insurance on the building issued in their name which they assigned to the Gnadls at the time of the signing of the sales contract. The theory of the contract seems to be that if a fire occurred, destroying or damaging the building, there should be enough insurance in effect which would guarantee to plaintiffs full payment of the purchase price. At that time the Gnadls had an election: they could continue to pay their agreed installments on the tract, collect the insurance which would belong to them in lieu of the build-

ing, and at the time agreed upon in the contract they would receive a warranty deed. On the other hand, they could elect to refuse to proceed further with the contract, in which case the Marbachs would have the right to declare a forfeiture. Had there been no fire the Marbachs, on forfeiture, under the terms of the contract, were entitled to keep as liquidated damages the money which had been paid in by the Gnadls; they would also receive back, clear of any claims or liens, the tract of land and the building thereon; however, since in this case the building was damaged or destroyed, when the Marbachs filed their declaration of forfeiture they had the right to retain the monies paid in by the Gnadls, together with the tract of land, and to receive from the insurance companies the proceeds of the policies, but not in excess of the balance unpaid under the contract.

The Gnadls seem to misinterpret the rights of the parties under the contract and the meaning of an equitable lien. They rely on cases which provide that where a contract is declared null and void all rights under the contract cease, but in the instant case the right of an equitable lien upon the insurance policies came into effect before there was any forfeiture on the contract. The authority given the sellers in the event of default under the contract was to declare the contract "forfeited and determined." This they did. When the court thereafter found that such action rendered the contract "null and void" it spoke as of the date of forfeiture and not "ab initio." The then existing rights of the sellers under the contract were not disturbed.

The Marbachs notified the insurance companies. After such notification, it would be at their peril if the insurance companies then paid the insurance money to the Gnadls. The Marbachs are not seeking to enforce the contract, nor are they attempting to affirm the contract in part and rescind as to the residue. In 25 ILP, Liens, § 4, it is said:

"In a discussion of the nature of an equitable lien, Justice Daily, speaking for the Supreme Court in Watson v. Hobson, 1948, stated: 'Equity recognizes, in addition to the personal obligation, in some cases, a peculiar right over the thing concerning which a contract deals, which it calls a "lien," and which, though not property, is analogous to property, by means of which the plaintiff is enabled to follow the identical thing and to enforce the defendant's obligation by a remedy which operates directly upon that thing.' The essential elements of an equitable lien include a debt, duty, or obligation owing by one person to another, and a res to which that obligation fastens, identified or described with reasonable certainty."

In 53 CJS, Liens, § 1, it is said:

"An equitable lien does not divest the debtor of title or possession, but is merely a charge on the property for the purpose of security, since it is a mere floating equity until a judgment or decree subjecting the property to the payment of the debt or claim is rendered."

In Grange Mill Co. v. Western Assur. Co., 118 Ill 396, 9 NE 274, a bill in equity was brought by the Grange Mill Company against certain insurance companies and Emison and Musselman. In the bill it was alleged that Grange Mill sold its mill property to the defendant, Emison, at a certain price, a part of which was to be paid in cash and the remainder to be paid by promissory note with interest. The mill property was totally destroyed by fire after it was taken possession of by Emison. Suits were brought by Emison against several insurance companies on policies procured by Emison & Co. for its own benefit. This bill was then filed in which the insolvency of Emison & Co. was asserted, and the insurance companies were made defendants. The court said:

313

"The bill is framed on the theory, Emison agreed at the time of the sale, and as a part of the contract, that he would have the property insured for the benefit of complainant. The evidence contained in this record has been subjected to a careful consideration, and it is thought it fully sustains the position taken, that Emison did agree to have the mill property insured for the benefit of his vendor. It is so expressed in a written memorandum made at the time, . . . But aside from the written memorandum, the agreement to procure insurance upon the property for the benefit of complainant is fully established by other testimony. Undoubtedly, the law is, that, as between the vendee and the vendor, the insurance money, in case of the destruction of the property, represents the property itself, and in equity the insurance money should be appropriated to the vendor in case of the insolvency of the vendee. The principle is of frequent application, where a mortgagor or vendee agrees to insure for the benefit of the mortgagee or vendor, in case of loss, in equity, such party is entitled to the insurance money, to the extent, at least, of his interest in the property which was the subject of insurance. After notice to the insurance company having the risk, such company can not pay the loss to the assured named in the policy, except at its peril, until the rights of the parties claiming the fund shall have been adjusted. Cases in this State, and elsewhere, recognize this equitable doctrine. [Citing cases.]"

In American Equitable Assur. Co. v. Newman, 132 Mont 63, 313 P2d 1023, the court, quoting from First Nat. Bank of Jessup v. Cappellini, 149 Pa Super 14, 26 A2d 119, stated:

" '. . . that if a mortgage contains a covenant that the property shall be kept insured by the mortgagor

314

for the security of the mortgagee, and pursuant to his covenant, the mortgagor takes out a policy of insurance covering the mortgaged premises the mortgagee will be entitled to the proceeds on an equitable lien even though the policy contains no mortgagee clause."

██ ██ Under the general rule as laid down in the cases, the court in the case before us properly imposed an equitable lien upon the proceeds of the insurance policies. The argument on the right of the court to impose such equitable lien is narrowed by the stipulation of the parties which is referred to in the order of the court of November 10, 1964, that the sole issue is whether the declaration of forfeiture filed by the plaintiffs extinguished their rights to the policies of the insurance issued in the case. Under the theory upon which the trial court proceeded, that there was an equitable lien upon the proceeds of the policy of insurance, the equitable lien became an inchoate lien at the time the building was burned. An equitable lien, although not judicially recognized until judgment is rendered declaring its existence, relates back to the time it was created by the conduct of the parties. Hise v. Superior Court of Los Angeles County, 21 Cal2d 614, 134 P2d 748; Wolverine Ins. Co. v. Phillips, 165 F Supp 335, DC Iowa, app dismd, 283 F2d 518, CA 8th; New v. New, 148 Cal App2d 306, 306 P2d 987; Holder v. Williams, 167 Cal App2d 313, 334 P2d 291.

The subsequent finding by the trial court that the Marbachs' declaration of forfeiture had terminated the Gnadls' interest in the property and rendered the contract void as a cloud upon the Marbachs' title, had no effect whatsoever upon the right of the Marbachs to an equitable lien upon the proceeds of the insurance policies. Before this court the Gnadls argue that the fact that the court dismissed Count III of the complaint and in its order stated that as to that contract the Gnadls

315

should go hence without day, was res adjudicata as to the issue now before the court. It is difficult to see how this issue could arise under the stipulation which was entered into between the parties, and in any case, the argument is not valid since Count III did not state a cause of action. The dismissal of Count III is not a bar to Count II, but is consistent with our finding that such insurance had, in fact, been provided through application of an equitable lien.

The cases cited by the Gnadls in support of their argument on this point are not applicable, nor does the fact that in their motion to terminate the contract the Marbachs did not mention that the Gnadls had failed to secure insurance in their name have any effect whatsoever upon the case, inasmuch as the contract made no provision that the Gnadls should secure insurance policies in the name of the Marbachs. The action of the Marbachs in assigning to the Gnadls the policy heretofore issued in the Marbachs' name was in accord with the contract.

The judgment of the Circuit Court of Cook County finding that the Marbachs are entitled to an equitable lien on the proceeds of the insurance policies issued by Citizens Insurance Company of New Jersey, Insurance Company of North America, and United States Fidelity and Guaranty Company, is affirmed. The case is remanded with directions to the court to determine the amounts payable under said policies and enter judgments therefor in favor of the Marbachs to the extent of the unpaid balance under the purchase contract, and in favor of the Gnadls to the extent of the excess, if any.

This conclusion having been reached by application of equitable principles, not through enforcement of the terminated contract, but in recognition of the equitable rights of the parties as determined prior to forfeiture, the trial court shall then require the Marbachs to do

equity by conveying title to the Gnadls if the proceeds of the insurance policies shall equal or exceed the unpaid balance under the purchase contract (including purchase price, taxes, etc., required to have been paid by the purchasers).

Affirmed and remanded.

DRUCKER, P. J. and ENGLISH, J., concur.