FRANK WHITE *et al.*, Plaintiffs-Appellants, *v.* UNITED STATES FIDELITY AND GUARANTY CO. *et al.*, Defendants-Appellees.

(No. 58725;

First District (4th Division)—July 24, 1974.

Jeffrey Lawrence, of Chicago, for appellants.

Jay Goran, *pro se,* and McCarthy and Levin, both of Chicago (John F. McCarthy, of counsel), for appellee Jay Goran.

Goldenson, Kiesler, Berman & Brenner, of Chicago (Eugene S. Goldenson, of counsel), for appellee United State's Fidelity and Guaranty Co.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The plaintiffs, Frank and Doris White, bring this appeal from an order of the circuit court of Cook County granting summary judgment in favor of the defendants, United States Fidelity and Guaranty Company (USF&G) and Jay Goran, on the plaintiffs' second amended complaint for general and punitive damages based upon allegations of breach of contract, breach of trust, fraud, and gross negligence in handling the proceeds of a fire insurance policy on the plaintiffs' residence.

The record establishes that on October 23, 1957, the plaintiffs entered into an installment contract to purchase a two-story residence located at 2947 West Jackson Boulevard in Chicago. The seller was Jay Goran, as trustee of a land trust. The purchase price of the building was stated as $17,900. The plaintiffs made down payments totaling $1200, and monthly payments of approximately $140 thereafter. The contract provided that: "Purchaser shall keep the premises herein insured against loss by fire * * * and shall deliver to Seller such policies of insurance as Seller shall approve as adequate protection therefor." By mutual assent, however, the parties established a practice under which Goran procured the required insurance and the plaintiffs paid the premiums as part of their monthly payments.

On September 11, 1965, USF&G issued a policy of fire insurance on the building in the amount of $13,000. The policy listed Jay Goran as the insured. It also contained à mortgage clause insuring the interest of Emil A. Wagner, trustee, and a contract-of-sale clause insuring the interests of the plaintiffs.

On April 26, 1967, while the policy was in effect, a fire of undetermined origin damaged the building. A public adjuster determined that the premises could be repaired for approximately $7000, and USF&G offered $7036.40 in settlement of the loss in June of 1967. The plaintiffs initially refused this offer, apparently upon the belief that more would be required to restore the building to its original condition, but after obtaining counsel and negotiating with USF&G, they decided to accept it. They signed the proofs of loss on September 21, 1967, and sent them to Goran, who sent them to USF&G. In late October, USF&G sent Goran a check for $7036.40 payable to Goran as trustee, Emil A. Wagner, trustee, the Fire Loss Appraisal Company, and the plaintiffs. Sometime

in December, Goran represented to USF&G that the plaintiffs had defaulted on their payments under the sales contract and could not be located. USF&G sent a second check, deleting the plaintiffs as payees, and Goran distributed the proceeds by paying $3,546.61 to the mortgagee and applying $3489.79 to the balance of $12,322.54 due him under the contract of sale at the time of the fire.

Following the date of the fire, the building was unoccupied. It appears that it was boarded up by a representative of either USF&G or the appraisal company, but the boards were removed by vandals who did considerable damage to the property. In his deposition, Frank White stated that he was aware that the boards had been removed and that the building was being vandalized, but he did nothing to prevent it. As a result of the vandalism the city of Chicago instituted an action for demolition. The plaintiffs were made parties and appeared in court on one occasion through their attorney, Herbert Wisch. This was in October, 1967. Neither the plaintiffs nor their attorney appeared thereafter, and on October 27, 1967, the court entered an order of demolition. The building was demolished on November 29, 1967. The city also brought an action against Goran for foreclosure of a demolition lien in the amount of $1185, and Goran paid this sum in order to have the lien released.

On April 9, 1968, the plaintiffs filed a complaint against USF&G in which they alleged in essence that USF&G had breached the insurance contract by failing to pay them the $7036.40 claimed in the proofs of loss and that as a result of the breach they had been unable to repair their building, causing it to be demolished by the city. They claimed $13,000 as damages, the amount of the policy. USF&G answered that it had discharged its obligations under the policy by paying $7036.40 to Goran, the named insured, and Emil A. Wagner, the mortgagee. It also filed a counterclaim in the nature of a third-party action against Goran on the theory that Goran had agreed to hold it harmless against any claim by the plaintiffs. Goran filed an answer to the counterclaim in which he stated that he had employed a public adjuster who had informed him that he would repair the building for $7036.40, but that the plaintiffs had refused to accept this sum until September, 1967; that the plaintiffs had left the building vacant and abandoned, causing it to become vandalized beyond repair and ultimately to be demolished; that he had paid the cost of demolition; that the balance owed him on the contract of sale at the time of the fire was $13,027.05; that the plaintiffs' attorney had demanded the insurance proceeds without expressing any willingness to repair the building; and that thereafter the plaintiffs' attorney did not answer any telephone calls, and the plaintiffs could not

be located. In addition to the answer, he filed a motion for summary judgment containing similar allegations and asserting that he was entitled to the insurance proceeds as a matter of law. USF&G also moved for summary judgment, adopting in substance the motion of Goran.

The plaintiffs filed an amended complaint on April 25, 1972. They alleged that USF&G breached the duty created by the contract-of-sale clause by failing to conduct an independent investigation to determine whether they could be located before issuing the second check deleting them as payees; that Goran falsely represented to USF&G that he could not locate them; that Goran had a duty to hold the proceeds of the policy as a constructive trustee for the purpose of repairing the building; and that by applying the proceeds to the balance due under the contract when they were not in default, Goran unlawfully accelerated the contract. They claimed that as a result of these actions they were unable to repair their building and lost its entire value, $17,900. Goran moved to strike and dismiss the amended complaint on the ground that it alleged only conclusions. USF&G filed an answer in which it stated on information and belief that at the time of the fire there was due on the mortgage $3,546.61 and on the contract $13,088.66 and that it paid the proceeds to Goran and the motgagee in accordance with the terms of the policy.

On June 8, 1972, Goran's motion to dismiss the amended complaint was denied. The plaintiffs filed answers to the motions of Goran and USF&G for summary judgment, and Goran filed an answer to the amended complaint and a counterclaim for the balance due under the contract. None of these alleged any new facts or substantially altered the positions of the parties. On July 20, 1972, the affidavit of Herbert Wisch was filed. Wisch stated that he had represented the plaintiffs in their negotiations with USF&G and had settled their claim for $7036.40. He stated further that he had never received a draft for the settlement and after repeated calls to USF&G had learned that it had been sent to Jay Goran. He left numerous messages for Goran, but Goran never returned his calls. Neither USF&G nor Goran ever requested that he have the plaintiffs endorse the draft, and he was never informed that a second draft had been issued.

On September 8, 1972, the plaintiffs filed a second amended complaint. This was identical to the first one, except that it sought punitive, as well as general damages. Both Goran and USF&G filed answers. On November 2, 1972, the affidavit of Esther Rothstein was filed, attached to which were copies of the proof of loss executed by the plaintiffs, the policy of insurance issued by USF&G and the ledger sheets reflecting the payments made by the plaintiffs on the contract. On December 4,

1972, the motions of Goran and USF&G for summary judgment were granted, and it was ordered that the plaintiffs take nothing by their suit. The present appeal followed.

■■ Summary judgment is an appropriate remedy if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1973, ch. 110, par. 57(3).) Summary judgment is an important tool in the administration of justice, and its use in a proper case is to be encouraged. (*Allen v. Meyer* (1958), 14 Ill.2d 284, 152 N.E.2d 576.) The question presented to this court, then, is whether this is a proper case. As stated in *Fooden v. Board of Governors* (1971), 48 Ill.2d 580, 272 N.E.2d 497, "if what is contained in the pleadings and affidavits would have constituted all of the evidence before the court and upon such evidence there would be nothing left to go to a jury, and the court would be required to direct a verdict, then a summary judgment should be entered." (48 Ill.2d at 587, 272 N.E.2d at 500.) As the plaintiffs correctly argue, all inferences are to be resolved in favor of the respondent, and all evidence is to be viewed in the light most favorable to him. (*Patterson v. Stern* (1967), 88 Ill.App.2d 399, 232 N.E.2d 7.)

In the present case, the following facts are uncontroverted: The plaintiffs entered into an installment contract to purchase a building from Jay Goran. The agreement required that the plaintiffs carry fire insurance to insure the interest of the seller in the unpaid balance. By mutual agreement, Goran obtained the insurance and deducted the cost from the plaintiffs' monthly payments. In 1965 Goran obtained a fire insurance policy on the premises in the amount of $13,000 from USF&G in which he was the named insured and in which the interests of the plaintiffs and the mortgagee were insured to the extent that they should appear, the interest of the plaintiffs being subordinate to that of the mortgagee.

On April 26, 1967, the building was damaged by a fire of undetermined origin. Immediately after the fire, the Fire Loss Appraisal Company would have repaired the damage for $7036.40, the settlement offered by USF&G, in June of 1967, but the plaintiffs refused this amount and delayed signing the proofs of loss until September, 1967. By this time the building had become extensively vandalized. The plaintiffs made no payments on the contract after April 6, 1967. In October, 1967, the city of Chicago instituted a proceeding for demolition. The plaintiffs appeared in this proceeding sometime in October, but took no part in it thereafter. The building was demolished in November, 1967, and Goran paid the cost of demolition.

In October, 1967, USF&G issued a draft for $7036.40 payable to

Goran as trustee, the mortgagee, the Fire Loss Appraisal Company, and the plaintiffs and sent it to Goran. The plaintiffs never endorsed this draft. In December, 1967, USF&G issued a second draft deleting the plaintiffs as payees, and Goran distributed the proceeds by paying $3546.61 to the mortgagee and $3489.79 to himself, to be applied to the unpaid balance due on the contract.

The plaintiffs contend that the pleadings establish issues of fact in two areas: whether the building was repairable at the time that the plaintiffs agreed to the settlement offered by USF&G and whether Goran made a bona fide attempt to locate the plaintiffs after receiving the first settlement draft. Concerning the first issue, the plaintiffs argue that Goran's own pleadings are contradictory because he states in his motion for summary judgment that the premises were vandalized beyond repair, while in his deposition he states that the premises were in poor condition, but repairable. This argument misrepresents the record. It was Goran's position throughout the proceeding that once the building had been vandalized it could not be repaired for the sum offered by USF&G in settlement of the fire loss. As he stated in his deposition, an additional three to four thousand dollars would have been required. The plaintiffs did not at any time contend that the premises could have been repaired for the amount of the settlement after they were vandalized (indeed, it was their position that this sum was insufficient even before the vandalism), and they never demonstrated a willingness or an ability to furnish the additional sum that would have been required to complete the repairs. In view of this, we find no issue as to whether the premises could have been repaired following the vandalism.

Concerning whether Goran made a bona fide attempt to locate the plaintiffs in order to have them endorse the first settlement draft, the plaintiffs contend that their attorney, Herbert Wisch, attempted to telephone Goran on numerous occasions, but that Goran was never in his office and did not return Wisch's calls. Goran contends that he made several unsuccessful attempts to contact Wisch and that he was unable to locate the plaintiffs. The depositions of both Frank White and Herbert Wisch indicate that White became dissatisfied with Wisch sometime in late October, 1967, and White either discharged Wisch or Wisch withdrew from the case. According to the chronology generally agreed upon by the parties, this would have occurred at about the time that USF&G issued the first draft. Thus it appears that Wisch no longer represented the plaintiffs during the time that he allegedly was available to be contacted by Goran.

■■■ Based upon the foregoing, we believe that there is no genuine issue as to any material fact and that the case is an appropriate one for

the entry of summary judgment. The question that remains is whether Goran was entitled to the proceeds of the policy as a matter of law. As a general proposition it seems well established that where the purchaser under an installment contract for the sale of realty agrees to insure the property against loss for the benefit of the seller, the seller is entitled to the proceeds of the insurance at least to the extent of his interest in the property. In *Mitchell v. McDougall* (1872), 62 Ill. 498, the defendant induced the plaintiff to convey certain real property to him by fraudulent representations. Thereafter the defendant obtained a policy of fire insurance on the property. The plaintiff instituted an action for recission, and while this action was pending, the property was totally destroyed by fire. The court stated that the right of the plaintiff to the insurance money would hardly be questioned, inasmuch "as the building upon the lot when sold, is now represented by that money  *  *  *." (62 Ill. at 506.) The court went on to say that after deducting the cost of the premium paid by the vendee and the cost of an addition to the building which he erected, which addition was covered by the insurance, the insurance company should pay the balance to the plaintiff. This view was reaffirmed in *Phoenix Insurance Co. v. Mitchell* (1873), 67 Ill. 43, in which the court held that although McDougall was the proper person to bring an action at law on the insurance policy, as between himself and Mitchell, the insurance money represented the building that had stood on the property.

In *Grange Mill Co. v. Western Assurance Co.* (1886), 118 Ill. 396, 9 N.E. 274, the plaintiff sold a mill to John T. Emison. The terms of the sale were that Emison was to pay a portion of the purchase price in cash and execute a note as security for the remainder. It was also agreed that he should insure the property for the benefit of the plaintiff. Emison made the cash payment, but refused to execute his note for the remainder. He took possession of the mill and obtained insurance for his own benefit. Subsequently, the property was totally destroyed by fire, and the vendor brought an action in equity against the vendee and the insurance company to recover the proceeds of the policy. In recognizing the interest of the vendor in the proceeds the court stated: "Undoubtedly, the law is, that, as between the vendee and the vendor, the insurance money, in case of the destruction of the property, represents the property itself, and in equity the insurance money should be appropriated to the vendor in case of the insolvency of the vendee. The principle is of frequent application, where a mortgagor or vendee agrees to insure for the benefit of the mortgagee or vendor, in case of loss, in equity, such party is entitled to the insurance money, to the extent, at least, of his interest in the

property which was the subject of insurance." 118 Ill. at 399-400, 9 N.E. at 275.

In *Marbach v. Gnadl* (1966), 73 Ill.App.2d 303, 219 N.E.2d 572, a case which is indistinguishable from the one before us, the plaintiffs sold a building and the land under it to the defendants pursuant to an installment contract. The contract provided that the purchasers should take out insurance as additional security for "at least the sum of [the] unpaid balance of [the] purchase price." (73 Ill.App.2d at 304, 219 N.E.2d at 574.) The purchasers obtained a policy in which they alone were named as insureds. The property was destroyed by fire, and the purchasers defaulted on their payments under the contract. The court held that the proceeds of the policy, which had been paid to the purchasers, were impressed with a trust in favor of the sellers to the extent of the balance due under the contract. It reasoned that the theory of requiring the purchasers to carry insurance was that if fire damaged or destroyed the building there would be enough insurance to cover the purchase price. The court went on to state that the purchasers had an election; they could either continue their payments, collect the insurance proceeds in lieu of the building, and, at the time specified in the contract, receive a warranty deed, or they could default, in which event the seller would be entitled to declare a forfeiture, retain the previous payments as liquidated damages, recover the land and building and, since the building had been damaged, the insurance proceeds to the extent of the unpaid balance on the contract.

In the present case the contract of sale required the plaintiffs, as purchasers, to maintain insurance on the premises. They accomplished this by arranging for Goran to obtain a policy and deduct the premiums from their monthly payments. Goran obtained a policy from USF&G in which he was named as the insured. Although not specified in the contract, there can be little doubt that the purpose of this insurance was, as in *Marbach*, to secure payment of the balance due under the contract in the event that the building should be damaged or destroyed.

There is no question the fire was of undetermined origin and the fault of neither party. If the evidence is viewed in the light most favorable to the plaintiffs, it may be inferred that the subsequent vandalism, which resulted in the building's total loss, was likewise the fault of neither party, although, arguably, it could have resulted at least in part from the plaintiffs' neglect. Following the fire the plaintiffs made no further payments on the contract. The parties differ concerning the exact balance due at the time of the fire, but even Frank White estimated

it to be around $8000, or significantly more than the sum received by Goran as the proceeds of the policy.

In summary, then, the insurance was maintained for the purpose of securing Goran's interest in the unpaid balance due under the contract. The building was totally destroyed through no fault of Goran's. The plaintiffs defaulted on their payments, leaving a balance due in excess of the anticipated proceeds of the policy. Under these circumstances we are of the opinion that Goran was entitled to the proceeds as a matter of law, and we so hold. We also hold that USF&G discharged its obligations under the policy when it paid the proceeds to Goran, Emil A. Wagner, the mortgagee, and the Fire Loss Appraisal Company. In fact, under the holding of *Grange Mill* we believe that it was required to distribute the proceeds in this manner once it had been informed of the balance due on the contract.

We do not mean to imply that there could never be a case in which equity would require a contract seller to apply insurance proceeds to the repair of the subject property. However, we do not believe that the facts of the present case warrant the application of such a rule. As we view the record, all parties concerned desired to have the building repaired immediately after the fire. Goran hired the Fire Loss Appraisal Company at his own expense to adjust the loss and reach a settlement with USF&G. A settlement was offered by USF&G which was sufficient to restore the property to its original condition; and either Fire Loss Appraisal or USF&G boarded up the building to prevent further damage.

However the plaintiffs were not satisfied with the settlement offer and delayed signing the proofs of loss. They stated no reason for their dissatisfaction, except that they felt entitled to the full amount of the policy. Nor did they ever maintain that the building could not have been repaired for the amount of the settlement. As a result of the delay, the building was vandalized to such an extent that it was not repairable for the amount of the settlement.

When the city commenced its action for demolition, Goran retained an attorney and opposed the action. It was through his efforts that the plaintiffs were informed of the action. It was also through his efforts that the date of demolition was postponed, giving the plaintiffs a final opportunity to arrange for repairs. However neither the plaintiffs nor their attorney appeared in court, and, after several continuances, the building was ordered demolished. The plaintiffs offered no evidence to support their position that they could have repaired the building with the funds from USF&G after it had been vandalized and before the city demolished it because of its dangerous condition. It was the unfortunate circumstance

of the vandalism and subsequent demolition that prevented the plaintiffs from repairing the building, and not the acts of Goran or USF&G.

The order of the circuit court entering summary judgments in favor of Goran and USF&G was proper, and it will be affirmed.

Affirmed.

ADESKO, P. J., and JOHNSON, J., concur.