848 F.2d 191
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John KLUKAVY, and Theodore Fitzgerald, Plaintiffs-Appellants,
v.
UNITED NATIONAL INSURANCE CO., Defendant, Lafayette-Orleans,
Inc., Plaintiff- Cross Defendant-Appellee.
 No. 87-1579.
 United States Court of Appeals, Sixth Circuit.
 May 31, 1988.
 
 Before LIVELY, KRUPANSKY, and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiffs-appellants John Klukavy and Theodore Fitzgerald, Jr. appealed from the entry of summary judgment for defendant Lafayette-Orleans in this interpleader action involving a dispute between plaintiffs and Lafayette-Orleans over entitlement to insurance proceeds payable by the stakeholder United National Insurance Co.
 
 
 2
 The insurance proceeds were payable as a result of a February 22, 1984 fire which destroyed a bar/restaurant in Detroit, Michigan. At the time of the fire, the establishment was operated by plaintiffs and title was in the name of Lafayette-Orleans.
 
 
 3
 Before the fire, on February 6, 1982 and April 6, 1982, Lafayette-Orleans had signed purchase agreements to sell the business for $87,000 to TRFJ, Inc. (a corporation of which plaintiffs were the sole shareholders). However, consummation of the sale and transfer of the bar were contingent upon approval of the liquor license transfer by the Michigan Liquor Control Commission. None of the $87,000 purchase price was paid to Lafayette-Orleans. Additionally, plaintiffs and Lafayette-Orleans entered into a management agreement under the terms of which Lafayette-Orleans would pay plaintiffs 5% of the gross sales of the business. During the period that plaintiffs managed the business, they advanced $30,000 to Lafayette-Orleans under terms and conditions which were ambiguous and remained in controversy.
 
 
 4
 On December 20, 1983, the Liquor Control Commission denied TRFJ's request for transfer of the liquor license, whereupon plaintiffs appealed the decision. The Commission affirmed its denial of the license on February 9, 1984.
 
 
 5
 On February 22, 1984, the property was destroyed by fire and plaintiffs filed the instant lawsuit alleging 1) that they are entitled to insurance proceeds as owners under the purchase agreement and 2) that Lafayette-Orleans was required to return to them the $30,000 advanced under the loan agreement.
 
 
 6
 The insurance policy in question provided for payment to the insured "as their interests may appear." The lower court ruled that plaintiffs had no insurable interest in the property and hence no entitlement to the insurance proceeds. Additionally, the court decided that plaintiffs had no right to recover under the management agreement because that agreement was illegal as determined by the Liquor Control Commission.[1]
 
 
 7
 A vendee's insurable interest in property is limited to the amount the vendee had actually paid under the purchase contract. Cf. Prince v. Royal Indemnity Co., 541 F.2d 646, 648, n. 1 (7th Cir.1976), cert. denied, 429 U.S. 1094 (1977) (management contract insufficient to constitute insurable interest because insurable interest limited to amount of actual property interest); Hartford Fire Insurance Co. v. Cagle, 249 F.2d 241, 243 (10th Cir.1957) (one who has option to purchase has insurable interest only to extent of monies paid in under the option and has no insurable interest beyond such sum); O'Neal v. Commercial Assurance Co. of America, 263 So.2d 246 (Fla.App.1972) (insurable interest limited to amount paid under contract).
 
 
 8
 Since it is undisputed that neither plaintiffs nor their corporation TRFJ[2] had paid any of the $87,000 sale price to Lafayette-Orleans, plaintiffs never had an insurable interest in the subject property.
 
 
 9
 Moreover, any interest plaintiffs may have possessed in the property was extinguished when the Michigan Liquor Control Commission refused to transfer the liquor license. Transfer of the license was a condition precedent to the contract. The agreement expressly was made "contingent upon approval of the buyer for licensing by the Liquor Control Commission." Such an explicit contractual provision voids the contract if such approval is not obtained. See Smeader v. Mason, 341 Mich. 139, 67 N.W.2d 131, 133 (1954) (where contract contingent on Liquor Control Commission approval of license transfer and such approval did not occur, no liability can be predicated on contract). In short, any contractual rights plaintiffs may have possessed terminated when the Commission refused to grant a transfer of the liquor license. Accordingly, the parties should be restored to the position they occupied if no contract had been consummated. Cf. Hartford Fire Ins., 249 F.2d at 242 (if vendee evidences clear intent to acquiesce in abandonment of contract, insurable interest is destroyed); Cetkowski v. Knutson, 163 Minn. 492, 204 N.W. 528 (1925) (after rescission of contract, vendee holds as trustee for vendor any insurance proceeds received); Russell v. Elliott, 45 S.D. 184, 186 N.W. 824 (1922) (same); Mitchell v. McDougall, 62 Ill. 498 (1872) (same). Accordingly, this court AFFIRMS the entry of summary judgment on the insurance claim.
 
 
 10
 This court is, however, constrained to reverse the lower court's disposition on the claim of account premised upon the $30,000 advanced or loaned under the terms of an agreement between the parties. The district court concluded that the loan was "so intertwined with" the provisions of the illegal management agreement that the loan was unenforceable.
 
 
 11
 However, the record does not disclose the precise terms and conditions that attached to the loan. It is unclear from the record whether it was used for illegal purposes.
 
 
 12
 Remand is necessary to determine whether the loan was an independent transaction or one designed to provide plaintiffs with an interest in or benefit from defendant's liquor license. The Management Agreement states that the loan was "for improvements to the establishment and payment of current obligations." It is possible that the "improvements" and "obligations" covered by the loan were not related to the liquor license. Additionally, it is possible that the loan was not an integral basis for the parties' decision to enter into the illegal management agreement.
 
 
 13
 Accordingly, this case is REMANDED to the district court for further consideration not inconsistent with this opinion.
 
 
 
 [1]
 The Commission decided that plaintiffs violated Michigan law by assuming control of the business prior to the Commission's approval of the license transfer
 
 
 [2]
 Since the corporation did not pay any purchase money to Lafayette-Orleans and hence has no insurable interest, this court need not reach the question of whether, as shareholders of TRFJ, plaintiffs had an insurable interest based on TRFJ's interest