Argued February 26, decided March 11, rehearing denied May 20, 1913.

DECKENBACH v. DECKENBACH.*

(130 Pac. 729.)

**Deeds—Validity—Sufficiency of Evidence—Mental Capacity.**

1. Evidence, in a suit to set aside a deed, *held* to show that defendant's grantor had mental capacity to comprehend the nature of his deed.

**Deeds—Validity—Sufficiency of Evidence—Undue Influence.**

2. Evidence, in a suit to set aside a deed, *held* insufficient to show that its execution was due to any undue influence of defendant over her husband, the grantor.

**Quieting Title—Right of Action—"Cloud on Title."**

3. A "cloud on title" arises by virtue of an instrument apparently valid upon its face, and which would put plaintiffs on their proof as against such instrument if it were admitted in evidence to support

*On the question when a deed is to be deemed testamentary in character, see note in 1 L. R. A. (N. S.) 315.—REPORTER.

adverse title; but no cloud arises upon an instrument void upon its face.

[As to suit to remove cloud from title, see note in 45 Am. St. Rep. 373.]

**Life Estates—Nature and Existence in General.**

4. An estate for life, although one of freehold, is not one of inheritance.

**Deeds—"Exception" and "Reservation" Distinguished.**

5. A "reservation" differs from an "exception," in that the latter is a part of the thing granted and of the thing *in esse* at the time, but the former is of a thing newly created or reserved out of a thing demised that was not *in esse* before; and no technical words are necessary in order to create either.

[As to reservations, exceptions and conditions in deeds, see note in 111 Am. St. Rep. 776.]

**Wills—Nature of Instrument—Deed or Will—Present Estate.**

6. An instrument, by which the owner of land, using the words, "have bargained and sold, and by these presents do grant, bargain, sell and convey" it, excepted and reserved to himself therein a freehold estate for the term of his natural life, with full power of control and management as such tenant for life, which was actually delivered and recorded, showed the intent of the grantor to convey a present estate in fee to the grantee, and was a valid deed, and not an instrument of testamentary character.

[As to deeds to take effect after death of grantor, see notes in 63 Am. Dec. 243; 49 Am. St. Rep. 219.]

From Multnomah: ROBERT G. MORROW, Judge.

Statement by MR. JUSTICE BURNETT.

This is a suit by John Deckenbach, Adam Deckenbach, Jacob Deckenbach, George Deckenbach and Catherine D. Leinhart against Johanna Deckenbach to set aside a deed and to remove a cloud from plaintiffs' title. The facts are as follows:

About 1876 Jacob Deckenbach deserted his wife and children in New Jersey and came to this state, accompanied by another woman, with whom he lived as his wife until her death in 1901. His first wife died in 1882. In 1902, for about six weeks, he visited his children in New Jersey, but returned to this state and married the defendant April 5, 1904. On February 5,

1906, he made, executed under seal in the presence of two subscribing witnesses, acknowledged so as to entitle it to record, and delivered to the defendant, the following instrument:

"Know all men by these presents that I, Jacob Deckenbach, of Portland, in the county of Multnomah and State of Oregon, in consideration of love and affection for and relationship to my beloved wife, Johanna Deckenbach, of Portland, Multnomah County, State of Oregon, have bargained and sold, and by these presents do grant, bargain, sell and convey unto the said Johanna Deckenbach, her heirs and assigns, excepting and reserving to myself therein a freehold estate for the term of my natural life, with full power of control and management as such tenant for life, all the following bounded and described real property situated in the city of Portland, county of Multnomah and State of Oregon, to wit:

"Lots one and two in block one hundred and twenty-five in the original town site of East Portland as the same appear on the duly recorded plat of the said town site in the county clerk's office in the said county and state.

"Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in any wise appertaining, and also all my estate, right, title and interest in and to the same except as hereinbefore excepted and reserved. To have and to hold the same unto the said Johanna Deckenbach, her heirs and assigns forever. And I, Jacob Deckenbach, the grantor above named, do covenant to and with Johanna Deckenbach the above-named grantee, her heirs and assigns, that I am lawfully seised in fee simple of the above-granted premises, and that the same are free from all encumbrances except as hereinbefore created, and that I will and my heirs, executors and administrators shall warrant and forever defend the above-granted premises and every parcel

thereof against the lawful claims and demands of all persons whomsoever.

"In witness whereof I, the grantor above named, have hereunto set my hand and seal this fifth day of February, A. D. 1906.

"JACOB DECKENBACH.    [Seal.]"

On February 7, 1906, the defendant caused this deed to be recorded in the deed records of Multnomah County.    Jacob Deckenbach died July 16, 1906, and the plaintiffs, his children by his first wife, instituted this suit, claiming to be the owners of the property described in the instrument quoted, and asking that it be removed as a cloud on their title; that they be adjudged to be the owners of the property in fee simple, subject to the dower right of defendant; and that she account to them for the rents and profits of the same from the date of her husband's death.    One cause of suit alleged in their complaint was that the conveyance mentioned was accomplished by the undue influence of the defendant, exercised over her husband to such an extent that the transfer of title was not in any sense his own doing, but, in effect, the act and deed of the defendant.    The second cause of suit, the relations of the parties and the execution of the conveyance being described, is summed up in this allegation: "That said instrument purporting to be a deed and set out in paragraph 4 of the first cause of suit herein, and by reference made a part of this second and further and separate cause of suit, is inoperative as a deed of conveyance, for the reason that by said instrument purporting to be a deed no present or vested interest in the real property described in said instrument was conveyed or transferred to or vested in the defendant, and that said defendant acquired no interest in or to said real property by reason of said instrument purporting to be a deed, and the same was and is inoperative

as a deed of conveyance.'' The answer traverses all the allegations of undue influence, as well as the second cause of suit, above quoted. The Circuit Court, after hearing the testimony, rendered a decree dismissing the suit, and the plaintiffs have appealed.

AFFIRMED.

For appellants there was a brief over the names of *Mr. Leroy Lomax* and *Messrs. Sinnott & Adams,* with an oral argument by *Mr. Lomax.*

For respondent there was a brief over the names of *Mr. Thad W. Vreeland* and *Messrs. Carey & Kerr,* with oral arguments by *Mr. Vreeland* and *Mr. Charles H. Carey.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1, 2. Concerning the first cause of suit, a careful reading of all the testimony discloses that the decedent deserted his first wife and his children, the plaintiffs, in 1876. He afterward came to this state and lived for some years with the woman alluded to as his second wife until her death, never having had any communication with his real wife or his children. After his marriage with defendant he continued to attend to his business, having amassed considerable property, both real and personal. He is described by all the numerous witnesses who knew him as a very determined man, not easily influenced by anyone. He made a will some time after his marriage with the defendant, in which he bequeathed to her $10,000 and made sundry bequests to his children, the plaintiffs. Afterward, and a few days before the date of the deed in question, he visited the office of his attorney alone and gave him directions about preparing the conveyance of the realty in question to the defendant, reserving to himself the

use and enjoyment of the same during his life. After the deed was prepared, he arranged a meeting between himself, the attorney, and the other subscribing witness at his home, where he executed the document in legal form and at once delivered it to the defendant, at the same time destroying the will already mentioned. While the testimony shows that, on account of the marital relations existing between him and the defendant, there was opportunity for her to beguile him into executing the deed, there is no word in the evidence showing that she ever intimated to him that he should make the conveyance in question. On the contrary, she testified that she had never asked for such a conveyance, and knew nothing whatever of his intentions to execute until the very time when he signed it and delivered it to her. All that is attempted to be shown directly by the testimony is that during their married life he was ill on several occasions, and at the time of making the deed he was in declining health; but it is clearly proved that the next day after the transaction the decedent and the defendant went to California on a pleasure trip lasting for several weeks, and after their return to Portland, where they resided, he superintended the erection of a brick building on the property involved, and continued actively in that employment until a short time before his death. The testimony impresses us with the belief, and we so find, that he had the mental capacity to know and comprehend the nature of the business in which he was engaged, and that the allegation of undue influence exerted over him fails for want of proof. As against that charge the deed is valid, within the meaning of the following authorities: *Carnagie* v. *Divan,* 31 Or. 366 (49 Pac. 891); *Swank* v. *Swank,* 37 Or. 439 (61 Pac. 846); *Dean* v. *Dean,* 42 Or. 290 (70 Pac. 1039); *Hamilton* v. *Holmes,* 48 Or. 453 (84 Pac. 154); *Pick-*

*ett's Will,* 49 Or. 127 (91 Pac. 377); *Reeder* v. *Reeder,* 50 Or. 204 (91 Pac. 1075); *Ames* v. *Moore,* 54 Or. 274 (101 Pac. 769); *Mansfield* v. *Hill,* 56 Or. 400 (107 Pac. 471, 108 Pac. 1007); *Stevens* v. *Myers,* 62 Or. 372 (121 Pac. 434).

3. As to the second cause of suit, we observe that the allegation, above quoted, contains nothing more than legal conclusions respecting the construction to be placed upon the instrument in question. If these deductions are correct, the invalidity of the deed is apparent upon its face, and would prove no obstacle against the plaintiffs, in an action at law, to recover possession of the property descending to them from their ancestor. A cloud upon one's title arises by virtue of an instrument apparently valid upon its face, and which would put the plaintiffs upon their proof as against such an instrument if it were admitted in evidence to support an adverse title; but no cloud arises upon an instrument void upon its face.

4-6. Passing, however, to the principal dispute on this branch of the suit, it is contended, in substance, by the plaintiffs that the document in question conveyed no present estate out of the grantor, but attempted to create an interest which would come into being at some future time, and hence was void as a deed of conveyance. They argued that because of these words, "excepting and reserving to myself therein a freehold estate for the term of my natural life, with full power of control and management as such tenant for life," the grantor kept for himself the entire estate, passing nothing at the time to the defendant, and maintained that he was still seised and possessed of the property, which after his death descended to them unaffected by the instrument.

Section 7100, L. O. L., reads thus: "Conveyances of lands, or of any estate or interest therein, may be made

by deed, signed and sealed by the person from whom
the estate or interest is intended to pass, being of law-
ful age or by his lawful agent or attorney and ac-
knowledged or proved, and recorded as directed in this
chapter without any other act or ceremony whatever.''
This comprises the whole formula for conveyancing,
and dispenses with the common-law livery of seisin.

As we construe this deed, the grantor conveyed at
the time the fee simple estate in the realty mentioned,
subject to his own life estate therein. As indicating
a grant *in praesenti*, we have only to look at the words
of the instrument, ''have bargained and sold, and by
these presents do grant, bargain, sell and convey.''
These are words of present grant, and consequently
indicate an intention of the grantor to convey at the
time a then actual interest in the lands mentioned. In-
deed, he retains ''the control of the estate for the term
of my natural life, with full power of control and man-
agement as such tenant for life.'' An estate for life,
although one of freehold, is not one of inheritance, and
it will be observed that it does not reserve the right to
convey the property, but only the power to control and
manage; and not only so, but those functions are to be
exercised only as such tenant for life. If Deckenbach
and the defendant had been divorced after the execu-
tion and delivery of the deed in question, without any
adjustment of their holdings in realty, no one would
contend that a clear title to the property described in
the instrument could have been acquired without a con-
veyance from Johanna Deckenbach.

It is argued that because the exception and reserva-
tion appear in what is technically known as ''the prem-
ises'' in the deed it must be construed as retaining the
whole estate, postponing all title to the grantee until
after the death of the grantor; but, as said in *Bryan*
v. *Bradley*, 16 Conn. 474, 481: ''A reservation differs

from an exception in this: That the latter is ever a part of the thing granted and of the thing *in esse* at the time; but the former is of a thing newly created or reserved out of a thing demised that was not *in esse* before.    No technical words are necessary in order to create either; and the real sense of the instrument is to prevail; and in several of the cases put in the Touchstone the word 'reserve' is used.    And Comyn says: 'An exception may be made by the word "reserving," which has sometimes the force of an exception or saving.' "  ·No advantage to the plaintiffs, therefore, can be predicated on a technical distinction between a reservation and an exception as against the real intent of the grantor as revealed by a consideration of the entire instrument.

The canon of construction in cases like this is thus laid down by Mr. Justice Eakin in *Sappingfield* v. *King,* 49 Or. 102, 108 (89 Pac. 142, 144, 8 L. R. A. (N. S.) 1066): "Did the maker intend to convey any estate or interest whatever to vest before his death and upon the execution of the paper, or, upon the other hand, did he intend that all the interest or estate should take effect only at his death? ·If the former, it·is a deed; if the latter, it is testamentary and revocable."

Taking it by its four corners, considering the words of present grant, remembering that the grantor retained only the control and management of the property as tenant for life, not as owner of the fee, and taking into account its actual present delivery and record, the effect of the instrument in question was· to convey a present estate to the grantee; and it must be construed as a valid deed: *Saunders* v. *Saunders,* 115 Iowa, 275 (88 N. W. 329); *Cone* v. *Cone,* 118 Iowa, 458 (92 N. W. 665); *Cross* v. *Benson,* 68 Kan. 495 (75 Pac. 558, 64 L. R. A. 560); *Christ* v. *Kuehne,* 172 Mo. 118 (72 S. W. 537); *Stamper* v. *Venable,* 117 Tenn. 557

(97 S. W. 812); *Sibly* v. *Somers,* 62 N. J. Eq. 595 (50 Atl. 321); *Pentico* v. *Hays,* 75 Kan. 76 (88 Pac. 738, 9 L. R. A. (N. S.) 224); *Kytle* v. *Kytle,* 128 Ga. 387 (57 S. E. 748); *White* v. *Willard,* 232 Ill. 464 (83 N. E. 954); *Brady* v. *Fuller,* 78 Kan. 448 (96 Pac. 854); *Thomas* v. *Sewing Mach. Co.,* 105 Minn. 88 (117 N. W. 155); *McIntyre* v. *McIntyre's Estate,* 156 Mich. 240 (120 N. W. 587); *Tansel* v. *Smith* (Ind. App.), 93 N. E. 548; *Pruett* v. *Cowsart,* 136 Ga. 756 (72 S. E. 30); *Mays* v. *Fletcher,* 137 Ga. 27 (72 S. E. 408); *Spencer* v. *Razor,* 251 Ill. 278 (96 N. E. 300); *Timmons* v. *Timmons* (Ind. App.), 96 N. E. 622; *Beebe* v. *McKenzie,* 19 Or. 296 (24 Pac. 236); *Prindle* v. *Iowa Soldiers' & Orphans' Home,* 153 Iowa, 234 (133 N. W. 106).

With the iniquity of the grantor in deserting his family and leaving them dependent on their own resources for so many years, or with the propriety of his conveying to his wife the great bulk of his property, leaving to his children only about $3,800 worth of personal property, as disclosed by the record, we have nothing to do, any more than if he had wasted his substance in riotous living in a far country. The property was his in fee simple, and it could make no difference in the decision of this case what he did with it, so long as he was competent to act as he chose.

The decree of the Circuit Court is affirmed.

AFFIRMED.