IRENE ESBJORNSSON v. BUFFALO INSURANCE COMPANY.

89 N. W. (2d) 893.

April 25, 1958—No. 37,280.

270

*Callaghan & Groven* and *Berger N. Sjoquist,* for appellant.
*Henry Halladay, Gregg Orwoll,* and *Dorsey, Owen, Barker, Scott & Barber,* for respondent.

MATSON, JUSTICE.

Appeal from an order denying plaintiff's motion for judgment notwithstanding the verdict, or for a new trial upon the issue of damages alone, or in the alternative upon all issues.

Plaintiff, the insured, brought this action on an insurance contract after her family dwelling in Litchfield, Minnesota, was destroyed by fire on May 27, 1955. Defendant insurer, which admits the issuance of

a fire insurance policy upon the dwelling, asserts as defenses to any liability under the policy: (1) That plaintiff had no insurable interest in the building; (2) that the policy was no longer in force and effect because of a change of conditions increasing the risk; and (3) that the plaintiff had caused the building to be burned. Upon these three issues the jury awarded a general verdict for the defendant.

The facts herein will be stated only in so far as they relate to the particular issue under consideration.

Did the plaintiff have an insurable interest in the property, as a matter of law, or was the trial court correct in submitting that issue to the jury as a question of fact? Plaintiff was the owner in fee of the residential lots and the buildings thereon when the policy was issued on January 22, 1954, and had, therefore, at that time, an insurable interest.

Plaintiff, however, on April 3, 1954, by warranty deed conveyed the land upon which the house was situated to the First Evangelical Lutheran Church of Litchfield. Immediately following the words of grant and the legal description, the deed contained this qualifying language:

"* * * *except the buildings thereon which title to the vendors reserve unto themselves* with the right to remove the same therefrom at any time within one year from date hereof." (Italics supplied.)

On the same day plaintiff and the church signed a separate agreement which allowed the plaintiff to use the premises conveyed by the deed for one year without payment of rent; reaffirmed plaintiff's right to remove the buildings within one year; and provided for the protection of trees and shrubberies in any removal of the buildings. This separate agreement concluded:

"It is mutually understood by and between the parties hereto that if said parties are to remain on said premises longer than said first year they are to secure such permission from the trustees of said second party."

Subsequent to the conveyance of the land to the church, namely on February 10, 1955, the coverage under the insurance policy was increased from $15,000 to $20,000 by an endorsement which also can-

celled $3,000 of coverage on an adjacent barn.

On January 28, 1955, the church served upon the plaintiff and her husband a notice to vacate the premises, concluding with this language:

"* * * you are hereby notified to vacate said lands, remove the said buildings therefrom and to surrender possession thereof to the said Church on or before April 30, 1955."

Despite said notice to vacate, plaintiff continued to occupy the premises until the latter part of April 1955, when she and her husband, after selling or removing at least the major portion of the household goods, slept elsewhere. The house was destroyed by fire on May 27, 1955.

■ We can only conclude that plaintiff at the time of the fire had, as a matter of law, an insurable interest; namely, an interest so that she stood in a position to gain in a monetary sense by the preservation of the property or to lose in a monetary sense by its damage or destruction. The qualifying language inserted in the deed contained two elements to which different legal consequences must be attached. The first element is embraced in the clause *"except the buildings thereon which title to the vendors reserve unto themselves"* (italics supplied) and constitutes an *exception* by which the grantor withdrew from the operation of the grant an existing portion of the property which, absent such exception, would have passed to the grantee under the terms of the grant. The second element is found in the words *"with the right to remove the same therefrom at any time within one year from date hereof"* (italics supplied) and constitutes not an *exception* but a *reservation* which in effect creates a new right (not theretofore in esse); namely, a right of removal. The legal consequences which flow from the deed of conveyance can best be understood if the distinction between an exception and a reservation are kept in mind. The distinction is not one merely of labels but rests upon the operative effect of the language used.[1]

"* * * The office of the exception clause in a deed is to withhold from its operation some part or parcel of the thing, which, but for the exception, would pass by the general description to the grantee. While on the

---

[1]The use of the terms "excepting" and "reserving" are not conclusive. See, 4 Elliott, Contracts, § 3864.

other hand, a reservation is the creation of some new right issuing out of the thing granted, and which did not exist as an independent right, in behalf· of the grantor and not of a stranger." 4 Elliott, Contracts, § 3864.[2]

A right acquired by the grantor by *reservation* in a deed stands upon the same footing as that which is acquired by direct grant or conveyance; but whatever is excluded from the grant by *exception* remains in the grantor as a retention of a part of his former title.[3]

In the light of these principles it is clear that title to the buildings located on the land conveyed to the church, *as an exception to the grant,* never passed to the church but remained in the plaintiff.[4] By conveying the land and retaining title to the buildings, the buildings were constructively severed from the land and became personalty. A constructive severance of fixtures,[5] inclusive of buildings,[6] so as to constitute them personalty, may be effected by an exception contained in a deed of conveyance.[7] This follows from the well-established principle that an owner of the fee, as an inherent part of his right of dominion over the land, may, by an express or an implied agreement with another, constructively sever buildings and fixtures from the land and thereby convert them into personalty.[8]

---

[2]See, Borst v. Empie, 5 N. Y. 33; Deckenbach v. Deckenbach, 65 Ore. 160, 130 P. 729; 1 Devlin, Real Estate (3 ed.) § 221; 3 Washburn, Real Property (6 ed.) § 2353.

[3]Stockbridge Iron Co. v. Hudson Iron Co. 107 Mass. 290, 321; 3 Washburn, Real Property (6 ed.) § 2353.

[4]Kennedy v. City of Hood River, 122 Ore. 531, 259 P. 911.

[5]Denvir v. Crowe, 321 Mo. 212, 9 S. W. (2d) 957.

[6]Kennedy v. City of Hood River, *supra;* see, Foster v. Mabe, 4 Ala. 402, 37 Am. D. 749; 1 Minor, Real Property (2 ed.) § 23.

[7]Caveat. Although parties, *as between themselves,* may by agreement effect a constructive severance and give a fixture or a building the character of personal property without an actual severance, such an agreement will not be permitted to impair the rights of third persons. See, 36 C. J. S., Fixtures, § 21; 22 Am. Jur., Fixtures, § 18.

[8]See, Merchants' Nat. Bank v. Stanton, 55 Minn. 211, 218, 56 N. W. 821, 822; Botsford Lbr. Co. v. State, 188 Minn. 247, 246 N. W. 902; Kittelson v. Collette, 61 N. D. 768, 240 N. W. 920; Western Maryland

■ The reservation to the plaintiff of a right to remove the building within one year from the date of the conveyance (inclusive of any extension thereof) gave to plaintiff a mere right to enter upon the land to remove the buildings. His neglect to exercise that right within the stipulated time could not effect or work a forfeiture of the title to the house which he had retained by excepting it from the conveyance.[9] Likewise, the notice to vacate is of no significance. In fact, there is nothing in the language of the parties indicative of an intent that the title to the building would be forfeited so as to convey or vest the title thereto in the church if plaintiff did not exercise his right of removal within any given time. As between the church and the plaintiff, the building was a personal chattel. It was in effect agreed that plaintiff could store such chattel upon the land of the church for a limited time. His title to that chattel remained unimpaired after his right of removal had expired, despite the fact that he might become liable in trespass for all damages resulting to the landowner if he thereafter entered upon the premises to effect a removal. What remedy the church had under the covenants of the deed is likewise of no significance and does not affect the title to the house.[10]

It follows that at the time of the fire the plaintiff was the owner of the house and as a matter of law she had an insurable interest therein. It was error, therefore, to submit the issue of insurable interest to the jury.

■ Was the issue of a change or increase of risk properly submitted to the jury? The policy itself provides that if circumstances affecting the risk shall, with the knowledge of the insured, be so altered as to

---

Dairy v. Maryland W. & E. Co. 146 Md. 318, 126 A. 135; Witmer's Appeal, 45 Pa. 455, 84 Am. D. 505; Johnston v. Philadelphia Mortgage & Trust Co. 129 Ala. 515, 30 So. 15; Myers v. Hancock, 185 Va. 454, 39 S. E. (2d) 246; Orr v. Metzger, 200 Okl. 53, 192 P. (2d) 647; 1 Minor, Real Property (2 ed.) §§ 23 and 36; 2 Tiffany, Real Property (3 ed.) § 624; 36 C. J. S., Fixtures, § 21e; 22 Am. Jur., Fixtures, §§ 13 and 14; 8 Dunnell, Dig. (3 ed.) § 3768.

[9]Kennedy v. City of Hood River, 122 Ore. 531, 259 P. 911; Davis v. Emery, 61 Me. 140, 14 Am. R. 553.

[10]See, Davis v. Emery, *supra*.

cause an increase of such risks, the policy shall be void. The question of a change of risk is normally for the jury and the insurer may present such facts as may show a change of risk. In Nathan v. St. Paul Mutual Ins. Co. 243 Minn. 430, 436, 68 N. W. (2d) 385, 390, this court pointed out that, although under the "valued policy" statute (M. S. A. 65.05) conditions which are reasonably discoverable by an inspection at the time a policy is issued or renewed cannot be shown as proof that the insured committed intentional fraud or misrepresentations increasing the risk, an insurer may present evidence of changes in the conditions or surroundings of the property which occur subsequent to the issuance of the policy and the issue of increased risk resulting therefrom may be submitted to the jury as a question of fact. The evidence herein clearly presented a question of fact for the jury. The trial court, however, erred in instructing the jury as follows:

"* * * You will also take into account what changes, if any, there were in the moral hazards affecting the risk of fire. And in that connection you will take into account the changes in the financial situation of the plaintiff Irene Esbjornsson, if you find changes to exist."

The foregoing portion of the charge was not only erroneous but prejudicial. During the trial the insurer introduced evidence in an attempt to show that plaintiff's husband had suffered financial reverses. Under the erroneous instruction the jury might have used this evidence as a basis for a finding that change of risk had occurred. The theory that financial losses may be regarded as such a change of "moral risk" *as to constitute an increase of risk* is so novel that we consider it without merit. We have found no decision or authority so holding. A homeowner would indeed be startled to learn that the fire insurance policy on his home was void because, subsequent to its issuance, he had sustained a minor or major financial loss. Obviously a policyholder may sustain a variety of financial reverses without having such losses treated as an increase in risk which voids his fire insurance policies. In attempting to establish the defense of arson, consideration normally may be given to evidence of severe financial losses as tending to prove a motive for intentional incendiarism. Such evidence, however, may not be used to establish the defense of an increase of risk. Our decisions concerning

an increase of risk as a defense have invariably involved situations where the physical condition or use of the property has changed.[11]

■ Upon the conflicting evidence the jury could reasonably find in favor of the defendant upon the issue of arson. We cannot know, however, if the general verdict was based on that issue or on one of the other issues. Since it was error to submit the issue of insurable interest to the jury, and since erroneous instructions were given on the increase of risk issue, a new trial must be granted. Where several issues of fact are tried and any one of them is erroneously submitted to the jury and a general verdict is returned, the losing party is entitled to have the verdict set aside and to have a new trial, unless it conclusively appears as a matter of law that the other party was entitled to the verdict upon other grounds.[12] The new trial must, of course, be granted on all pertinent issues and not merely on the issue of damages.

The order of the trial court is reversed.

Reversed.

---

[11]See, Betcher v. Capital Fire Ins. Co. 78 Minn. 240, 80 N. W. 971; Taylor v. Security Mutual Fire Ins. Co. 88 Minn. 231, 92 N. W. 952; Schaffer v. Hampton Farmers Mutual Fire Ins. Co. 183 Minn. 101, 235 N. W. 618, 236 N. W. 327; Nathan v. St. Paul Mutual Ins. Co. *supra;* see, also, 9 Dunnell, Dig. (3 ed.) § 4769.

[12]See, Schroht v. Voll, 245 Minn. 114, 71 N. W. (2d) 843; 14 Dunnell, Dig. (3 ed.) § 7174.