**The UNITED STATES of America,
Plaintiff,**

v.

**ILLINOIS FAIR PLAN ASSOCIATION,
an Association, Defendant.**

**No. 73 C 2866.**

United States District Court,
N. D. Illinois, E. D.

June 16, 1975.

James R. Thompson, U. S. Atty., Chicago, Ill., for plaintiff.

Daniel J. Leahy, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

MARSHALL, District Judge.

Plaintiff, United States of America, brought this action to recover on a fire insurance policy on behalf of the Small Business Administration (hereinafter "SBA"), the assignee of a policy issued by the defendant insurer. Jurisdiction is based on 28 U.S.C. § 1345. Plaintiff moved for a protective order barring defendant's request for production of certain documents. Both parties moved for summary judgment on whether the policy covered the personal property destroyed by the fire. The motions are now ready for decision.

Although the facts of this case are fully set forth in our earlier memorandum opinion,[1] a brief restatement of those facts material to the pending motions is necessary. Alfred Lumpkin, doing business as Lumpkin's Food & Liquor, obtained a loan from The First National Bank of Chicago (hereinafter "Bank") and gave the Bank a note and a security interest in his equipment, fixtures, inventory and receivables. As required by the loan agreement, Lumpkin obtained a fire insurance policy from defendant, naming the Bank as payee to the extent of its security interest under a standard mortgage clause. The SBA guaranteed 90% of Lumpkin's note to

---

1. Memorandum Opinion in *United States of America v. Illinois Fair Plan Association*, December 23, 1974.

the Bank. After Lumpkin defaulted, the SBA paid the Bank the 90%, or $35,880 and the Bank assigned its security interest in Lumpkin's property and its interest in the insurance policy to the SBA. Because Lumpkin had difficulty meeting his loan payments, he cashed some stolen government checks to make payments to the Bank. A fire subsequently destroyed the insured property.

Defendant denies liability under the policy, alleging that Lumpkin intentionally caused the fire. Defendant also claims that the policy was void because SBA knew that Lumpkin was likely to start a fire due to his severe financial difficulties, and failed to notify defendant of this increased hazard. Under the policy's mortgage clause, if the mortgagee fails to notify the insurer of a known increase in hazard, the policy is void.

### Discovery and Protective Order

In order to prove that SBA had knowledge of Lumpkin's financial state, defendant requested production of a number of documents from the SBA file on Lumpkin's loan. One week later, defendant requested production of the Postal Inspection and Secret Service files concerning the investigation of Lumpkin for cashing stolen government checks. Plaintiff moved for a protective order under *Fed.R.Civ.P.* 26(c) barring discovery because the requested material is privileged and immaterial.

 Plaintiff asserts that the Postal Inspection and Secret Service files are privileged because they are investigatory records compiled for law enforcement purposes.[2] Unless the litigant's need for this kind of information outweighs the Government's need for secrecy, the claim of privilege should be sustained. *See* 8 Wright and Miller,

*Federal Practice and Procedure: Civil,* ¶ 2019, at 169 (1970), and cases cited therein. In this case, defendant has an alternative means of proving that the SBA had notice of the Secret Service investigation of Lumpkin. Defendant requested a report in the SBA file concerning a Secret Service report to the First National Bank regarding Lumpkin's check forgeries.[3] This report would demonstrate that the SBA had notice of Lumpkin's activities, yet would not jeopardize the need for secrecy in criminal law enforcement investigations. Thus, defendant has not demonstrated that its need for information outweighs the Government's need for secrecy, and the protective order is granted with respect to these files.

 Plaintiff also seeks to block production of ten documents from the SBA file on Lumpkin on the grounds that these documents are privileged as intra-agency reports and recommendations. Defendant correctly notes, however, that Item # 7, a letter from an SBA official to the First National Bank is not an intra-agency memo. Similarly, Item # 14, a report written by a bank official is not a communication wholly within the SBA, and these documents cannot be hidden behind the screen of privilege covering intra-agency documents.

 With respect to the remaining eight documents, plaintiff cites 13 C.F. R. § 102.3(b)(2), which lists several kinds of SBA records involved in litigation affecting the SBA as justifying its claim of privilege. Defendant does not deny that the broad scope of these regulations encompasses the reports and letters at issue here. Nevertheless, the privilege need not be extended to the documents defendant desires, because disclosure will not thwart the avowed

---

2. This privilege is recognized in the Freedom of Information Act, 5 U.S.C. § 552 (1970), which specifically exempts investigatory records compiled for law enforcement purposes from its coverage.

3. Government's Memorandum in Support of Its Motion for Protective Order, Exhibit 1, Item No. 12.

objectives of the SBA regulations. The most important purpose, encouraging candor from businessmen, requires only that the SBA not release information to competitors. Defendant is an insurer, not a competitor, and would have been able to obtain comparable records from the Bank had the policy not been assigned to the SBA. Thus, the SBA regulations are not barriers to discovery in this case.

█ In addition, no other privilege available to the Government or to private parties shields plaintiff. The documents are unrelated to national security. They were not created in the course of an attorney-client relationship. Although they may contain opinions and conclusions, they are not protected by the work-product privilege because they were not prepared in anticipation of litigation. In sum, plaintiff has simply failed to give the compelling reasons for secrecy needed to sustain a claim of privilege.

██ The claim of privilege, however, is not the only basis for granting a protective order. Plaintiff also contends that the documents are not relevant to any issue in the lawsuit. The evaluation of this contention under *Fed.R.Civ.P.* 26(c), is largely discretionary. *Spier v. Home Insurance Co.,* 404 F.2d 896 (7th Cir. 1968).

Defendant's theory of relevancy is as follows: After Lumpkin had suffered financial setbacks, it is alleged, he was more likely to destroy his property and there was an increase in the risk of loss within the meaning of the two increase of hazard clauses in the insurance policy. If defendant can prove that the SBA knew of this increased hazard and failed to notify it, then the policy is voided. Increase of hazard clauses, how-

ever, usually refer to dangerous changes in the use of the insured property, rather than changes in the mental or moral state of the insured. In other words, the increased risk against which the clauses guard is that the property will burn and not that the insured will burn it.[4] If defendant's argument were accepted, then financial adversity sustained by the insured would release the insurer from liability. Surely a more direct connection between the insured's conduct and the likelihood of his destroying his own property is required to release the insurer.

█ The facts about Lumpkin's financial problems, however, are relevant to the defense of arson because they have some bearing on whether Lumpkin had a motive to destroy his property. Of course, more circumstantial or direct evidence is needed to prove that Lumpkin actually did burn his property. The Supreme Court of Minnesota distinguished evidence probative to show arson from that probative to show moral hazard as follows:

> In attempting to establish the defense of arson, consideration normally may be given to evidence of severe financial losses as tending to prove a motive for intentional incendiarism. Such evidence, however, may not be used to establish the defense of an increase of risk.[5]

Following this analysis, it is evident that although the documents are not relevant on the issue of moral hazard, they are relevant to show a motive for arson and, accordingly, should be produced.

In conclusion, the motion for a protective order is granted with respect to the requested material in the Postal Inspection file and the Secret Service file, and denied with respect to all documents requested from the SBA file.[6]

---

4. *See* 8 Couch, *Cyclopedia of Insurance Law,* § 37:711, at 320 (2d ed. 1961), for a discussion of this theory of moral hazard.

5. *Esbjornsson v. Buffalo Ins. Co.,* 252 Minn. 269, 89 N.W.2d 893, 897 (1958).

6. In light of this disposition of the motion for a protective order, it is unnecessary to

*Motions for Summary Judgment*

The second issue presented by these motions is whether plaintiff, as holder of a security interest in personal property, can recover under the insurance policy standard mortgage clause. This clause generally refers only to real property, and defendant relies on a number of cases in which courts have strictly construed standard mortgage clauses to cover realty only, despite the mortgagee's interest in personalty as well.[7] Plaintiff does not dispute that its security interest, according to the assignment, is in personal property. Nor does plaintiff question the interpretation of standard mortgage clauses, including the phrase, "building items," to cover realty and not personalty.[8]

Plaintiff's argument, rather, is that the policy is nonsensical if literally intrepreted because it would then mean that Lumpkin insured property he did not own.[9] Thus, plaintiff seeks reform action of the policy to correspond with the intent of the parties, under the doctrine of mutual mistake. Plaintiff urges that Lumpkin intended to procure a policy in which the mortgagee's insured interest was personalty, that the defendant insurer omitted the proper language by mistake, and that the Bank mistakenly failed to notice this omission. Although this construction of the facts is sensible, it rests on unresolved factual issues with the result that both motions for summary judgment must be denied.

The first problem with plaintiff's theory is that the record at best, contains only evidence of Lumpkin's intent and no evidence of defendant's intent.[10] The second problem is that the doctrine of mutual mistake rests on the subjective intent of the parties to a contract, which are factual issues. Because the summary judgment procedure must be reserved for cases with no genuine issues of material fact, Professor Moore notes that when mutual mistake involves subjective facts, summary judgment is likely to be inappropriate. 6 *Moore's Federal Practice,* § 56.17 [41.–1, –2], at 2591 (2d ed. 1974).

For these reasons, plaintiff's motion for a protective order with respect to the Postal Inspector and Secret Service files on Lumpkin is granted. Plaintiff's motion for a protective order with respect to all documents in the SBA file is denied. Both plaintiff's and defendant's motions for summary judgment on the issue of coverage are denied.

---

consider defendant's contention that plaintiff waived its claim of privilege by allowing defendant's attorney to personally inspect the SBA file.

7. *See, e. g., Employers' Liability Assurance Co. v. Royals Farm Supply Inc.,* 186 So.2d 317 (Fla.Ct.App.1966); *Clarke v. Real,* 105 Pa.Super. 102, 159 A. 454 (1932).

8. Plaintiff's Memorandum in Support of Its Motion for Summary Judgment at 8.

9. Plaintiff cites a number of federal and Illinois cases in which courts have imposed equitable liens in favor of mortgagees into insurance policies if the mortgagor had a duty to insure. These cases are inapposite because the policy at issue here already contains a standard mortgage clause and names the mortgagee as payee. *E. g., White v. United States Fidelity and Guaranty Co.,* 21 Ill.App.3d 588, 316 N.E.2d 131 (1st Dist. 1974); *Weiner v. Sentinel Fire Ins. Co.,* 87 F.2d 286 (2d Cir. 1937).

10. *See* Affidavit of Lemuel Foster in Support of Plaintiff's Motion for Summary Judgment. For a court to grant reformation of an insurance contract, the mistake must be mutual, not unilateral. *Continental Insurance Co. of New York v. Cotten,* 427 F.2d 48 (9th Cir. 1970); *State Farm Mutual Auto Insurance Co. v. Hanson,* 7 Ill.App.3d 678, 288 N.E.2d 523 (4th Dist. 1972).