In re TRESTLE VALLEY
RECREATION AREA,
INC., Debtor.

MINOT AREA DEVELOPMENT
CORPORATION, INC., Plaintiff,

v.

Phillip D. ARMSTRONG, Trustee for
Estate of Trestle Valley Recreation
Area, Inc., Defendant.

Bankruptcy No. 82–05626.
Adv. No. 82–7396.

United States Bankruptcy Court,
D. North Dakota.

Oct. 22, 1984.

Nevin Van de Streek, Minot, N.D., for plaintiff.

Phillip D. Armstrong, Minot, N.D., Trustee.

## MEMORANDUM OPINION AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

By Complaint originally filed November 16, 1982, and as amended December 3, 1983, the Plaintiff, Minot Area Development Corporation, Inc. (MADC) seeks relief from stay in order to foreclose its security interest in a wood-frame ski lodge. The Defendant/Trustee interposed an Answer claiming the Plaintiff's security interest to be unperfected and subordinate to the lien of the Trustee.

The parties have agreed the case may be decided on a joint stipulation of facts, including documents which are herein adopted as the Court's Findings of Fact, to-wit:

## FINDINGS OF FACT

The Debtor, Trestle Valley Recreation Area, Inc. (TRESTLE VALLEY) was incorporated in September 1974 for the purpose of developing and operating a ski resort. Towards that end, it entered into a ten-year lease of real property from the owner, James W. Shaw. This lease provided that, upon termination, the tenant was authorized to remove from the land all recreational equipment, fixtures and buildings.

Financing for the ski area was obtained through MADC which, as a condition for a loan, required Trestle Valley to extend a first lien on the wood-frame ski lodge then under construction. On December 31, 1974, Shaw and Trestle Valley entered into an agreement which provided:

"... [T]he parties hereto agree that the structure now under construction to serve as the ski lodge on the leased premises shall, as to any lien or secured interest acquired by MADC, not be considered to be a fixture or part of the real estate, and that any interest in said structure acquired by Shaw pursuant to his lease with Trestle Valley shall be subordinate to any lien or security interest therein which Trestle Valley shall grant to MADC."

On January 15, 1975, MADC loaned Trestle Valley $65,000.00 evidenced by promissory note and, in connection therewith, Trestle Valley by a signed security agreement extended MADC a security interest in:

"Two-story wood-frame building serving as ski lodge on Trestle Valley Recreation Area leased from James W. Shaw under commercial lease dated October 17, 1974, together with all improvements and additions now or hereafter affixed thereto."

One year later, on December 15, 1976, MADC loaned Trestle Valley another $15,000.00 evidenced by another note.

On May 16, 1979, MADC recorded a Standard Form UCC 1 financing statement with the North Dakota Secretary of State and with the Ward County, North Dakota, Register of Deeds. Both of these statements described the collateral exactly as set forth in the security agreement itself. The financing statement was filed with the Ward County Register of Deeds as a chattel filing and remained on file when Trestle Valley filed its bankruptcy petition on November 10, 1982. This financing statement was signed by the proper parties and provided information relative to the name of the Debtor, the secured party and the type of collateral as earlier described herein.

On September 20, 1982, a certified copy of the financing statement as earlier recorded in Ward County was re-recorded in the real estate records of the Ward County Register of Deeds. As re-recorded, the financing statement bore the additional words, "This is a fixture filing on section 19–155083 owned by James Shaw, aka James W. Shaw." The reverse side of the refiled document bears the legal description of the real property followed by the words "This is transacted on all the above".

The parties have further stipulated that if the ski lodge is not a fixture, then it is

not a fixture only by virtue of the severance agreement between James W. Shaw and Trestle Valley. By this, it is apparently conceded between the parties that the ski lodge by its manner of attachment to the land would be considered a fixture as the term is statutorily defined by N.D.C.C. § 41–01–04.

## CONCLUSIONS OF LAW

MADC first argues that by virtue of the severance agreement the ski lodge is personal property against which it holds a properly perfected security interest. In the alternative, MADC takes the position that even if the severance agreement is ineffective, its interest is nonetheless perfected as against any interest which the Trustee (may) avail himself of under section 544 of the Bankruptcy Code. The Trustee takes the position that the severance agreement is ineffective as against a third party and further contends that MADC's filings were deficient as fixture filings under North Dakota Century Code § 41–09–41(5) (U.C.C. § 9–402(5)). He premises his argument upon an interpretation of the filing requirements of N.D.C.C. § 41–09–34(1)(b) (U.C.C. § 9–313(1)(b)) and N.D.C.C. § 41–09–41(5) (U.C.C. § 9–402(5)). The original financing statement filed on May 16, 1979, was filed in the chattel mortgage file of the Register of Deeds Office but did not bear the information required by section 9–402(5) sufficient to render it a fixture filing nor was it recorded in the real estate records of the county at that time. The Trustee concedes that the amended statement of September 1982 did contain the required information but contends nonetheless that it also was defective because MADC only filed it in the real estate records and not in the chattel mortgage file.

Before considering whether a proper fixture filing occurred and whether such filing was necessary to perfect MADC's interest as against the Trustee, it is important to discuss the issue of severance.

1.

It is unnecessary to this discussion to decide whether the ski lodge by its nature and method of attachment would be considered a fixture as that term has been defined in North Dakota statutes and definitive case law. The parties have agreed by their Stipulation of Facts that the ski lodge is indeed a fixture unless the severance agreement had the legal effect of transforming it into personal property. The severance agreement entered into in December of 1974 specified that as to any interest acquired by MADC, the lodge would not be considered a fixture or part of the real estate and that the property owner's interest in the lodge would be subordinate to MADC's security interest. This agreement apparently was never filed or recorded and not a matter of public information. The only documents filed were the financing statements, and they make no reference to a severance agreement nor is there anything in them suggesting the possibility of such an agreement. The general rule is that while parties may by agreement fix the status of property either as realty or personalty, such agreements have no effect as against third parties without notice. *Esbjornsson v. Buffalo Insurance Co.*, 252 Minn. 269, 89 N.W.2d 893 (1958); 35 Am. Jur.2d, Fixtures, section 18. See also the case of *Cummings, Inc. v. Beardsley*, 271 Ark. 596, 609 S.W.2d 66 (1980) where the court held that a severance agreement between parties had no effect on persons who were not parties to the agreement and who had no knowledge of the severance provisions. As to these persons, said the court, the severed property, irrespective of the agreement between the parties, remained a fixture. Section 544(a) of the Bankruptcy Code vests the trustee as of the date of the bankruptcy filing with the status of a lien creditor without knowledge. As such, the trustee must be presumed to be without knowledge of the severance agreement, and the Court therefore concludes that the agreement was ineffective as against the Trustee's claim. As against the Trustee, the ski lodge remained a fixture.

## 2.

■ The severance agreement is not effective to transform the ski lodge into personal property as to the Trustee or other third parties. Nevertheless, MADC argues that its interest in the ski lodge is superior to that of the Trustee, regardless of whether or not its purported fixture filings were proper.

Armed with the mantle of section 544(a), the trustee's interest in a debtor's property has priority over an unperfected security interest in that property. The avoiding powers of section 544, however, do not give the trustee the status of lienholder against property in which the debtor never had an interest. In the instant case, the interest we are concerned with is the Debtor's interest in the ski lodge. We are not concerned with claims against the real property itself or James W. Shaw's interest as owner in the real property. The Trustee, in resisting MADC, is not claiming to be an owner or encumbrancer of the real property itself but rather is seeking to avoid MADC's security interest cloaked with the status of a hypothetical lien creditor. Keeping this distinction in mind, the important determination is whether it was necessary for MADC to properly obtain a fixture filing in order to perfect a prior claim to the property as against subsequent judicial lien creditors of the Debtor. Stated in another way, the ultimate issue in this instance is whether a trustee is given sufficient standing under the Bankruptcy Code to claim an interest in property classified as a fixture so as to gain priority over creditors merely holding a claim in the property based solely on its character as personal property.

Perfection of an interest in collateral takes on different requirements depending on how the collateral is characterized. Regardless of the characterization, however, the creditor must take the requisite steps prescribed by the Uniform Commercial Code for that particular collateral. When perfection is sought in collateral as a fixture, the Uniform Commercial Code requires that the financing statement contain information bearing on the location and identity of the real estate and its owner and recite the fact that it is to be filed for record in the real estate records. N.D.C.C. § 41–09–41(5) (U.C.C. § 9–402(5)). If filing is intended as a fixture, then that filing is to be in the office where a mortgage on real estate would be filed or recorded. N.D.C.C. § 41–09–41(1)(b) (U.C.C. § 9–401(1)(b); N.D.C.C. § 41–09–34(1)(b) (U.C.C. § 9–313(1)(b)). The purpose of this additional information and real estate record filing requirement is to preserve the fixture lender's interest as against subsequent real property interests who, in checking title, would normally resort only to the real property records rather than the chattel mortgage file. That this special information and filing requirement was intended to protect persons claiming an interest in the real estate is evident from the comments of the Uniform Commercial Code drafters who, in prescribing filing in the real estate records, said that such requirement was necessary only if the priority advantages of section 9–313 were desired by the creditor.

> "If the secured party is not concerned about priority against real estate parties, he can file for a fixture as for an ordinary chattel, in the chattel records, omitting the filing in the real estate records, and he will have a security interest perfected against everyone but real estate parties." *See* U.C.C. § 9–401 Statement of Reasons for 1972 Changes in Official Text.

If priority against real property claimants is deemed unnecessary, then a filing in the real estate records is unnecessary. Failure to perfect as a fixture filing, however, affects only the priorities as against persons claiming an interest in the real property itself. It was never the intent of the drafters of the Uniform Commercial Code that an otherwise properly perfected security interest in the collateral would be defeated by claims of judgment lien creditors on the basis of an improper fixture filing. A judgment lien creditor is not one who would even have reason to search real property records on real estate not owned by the debtor, and a fixture filing in those

real estate records may not even constitute notice to him.

The Trustee in the instant case has taken the position that failure as a fixture filing renders MADC's security interest infirm for all purposes. This is not a correct interpretation of the Uniform Commercial Code sections. MADC's interest in the ski lodge as a chattel was properly perfected in 1979 with the recording of a financing statement in the chattel records of Ward County Register of Deeds. That financing statement was completely sufficient to afford any lien creditor notice of the fact that MADC was claiming a security interest in the two-story wood-frame building serving as a ski lodge situated on the property being leased from James W. Shaw. Of course, this financing statement did not comply with the requirements sufficient to render it· a fixture filing and thus, as against claimants to the real estate itself, it would be deficient. The Trustee's challenge, however, is premised upon his status as a lien creditor. A trustee is given the rights of a hypothetical lien creditor under section 544 of the Bankruptcy Code. That section provides, in part:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists:
. . . .

(3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(1) and (3). Section 544 does not in this instance place the Trustee in the shoes of a bona fide purchaser of the real estate. The real estate upon which the ski lodge is located is owned by a party other than the Debtor. Likewise, the Trustee may not as a basis for his claim in this matter assume the position of a creditor of the real estate owner. Nevertheless, these are precisely the classes of claimants over which a proper fixture filing would take priority. Those are the classes of claimants which are concerned about the perfection of an interest in fixtures. Generally, the trustee is merely concerned with collecting unsecured chattels of the debtor. In this instance, MADC does have a properly perfected chattel interest in the ski lodge by reason of the financing statement filed May 16, 1979. As a result, the Trustee may not claim an interest in the property. The Bankruptcy Code itself makes it clear that with respect to a fixture, status as a bona fide purchaser of real property is not available to a trustee seeking to avoid a transfer of an interest in a fixture.

Former section 60 of the Bankruptcy Act was unclear as to whether the time of perfection of a security interest in fixtures was to be measured by a judgment lien creditor test applicable to personal property or by a bona fide purchaser test applicable to real property. Section 547(e)(1)(B) of the Bankruptcy Code, which is the successor to former section 60 of the Bankruptcy Act, met the concerns of the Uniform Commercial Code drafters regarding when perfection of a security interest in a fixture occurs. That section provides:

A transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of transferee.

Section 547(e)(1)(B) of the Bankruptcy Code identifies when a security interest in fixtures becomes perfected for purposes of avoidance of a preferential transfer. By analogy, that section may also indicate the limits of the trustee's avoiding powers under section 544. Thus, section 547(e)(1)(B)

illustrates that MADC's perfection of the security interest in the ski lodge in 1979 was adequate as against a lien creditor and was thereby also adequate as against the Trustee's avoiding powers. It is not necessary to decide whether the later 1982 filing was a proper fixture filing effective against the Trustee because the Trustee's claim is not against the real estate but only against the Debtor's transfer of an interest in a fixture. The Court finds that MADC's security interest in the ski lodge is superior to any claim or interest of the Trustee. Accordingly, it is the judgment of the Court that the automatic stay be lifted and it be permitted to foreclose upon its security interest.

JUDGMENT MAY BE ENTERED ACCORDINGLY.

IT IS SO ORDERED.