In re Jerry N. LUCERO and Crystal Fields Lucero, Debtors.

Jerry N. LUCERO and Crystal Fields Lucero, Plaintiffs,

v.

GREEN TREE FINANCIAL SERVICING CORPORATION, Defendant.

Bankruptcy No. 113–95–12788 MS.
Adv. No. 95–1250 M.

United States Bankruptcy Court,
D. New Mexico.

July 26, 1996.

Michael K. Daniels, Albuquerque, NM, for debtors.

Daniel E. Duncan, Albuquerque, NM, for defendant.

Steven H. Mazer, Trustee, Albuquerque, NM.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

THIS MATTER came before the Court upon the plaintiffs' motion for summary judgment declaring the claim of Green Tree Financial Servicing Corporation (Green Tree) to be unsecured, and upon Green Tree's cross motion for summary judgment declaring its security interest to be valid, perfected and enforceable. The Court having considered the arguments of counsel, reviewed the pleadings and briefs, and being otherwise fully advised, enters this memorandum opinion.

### FACTS

1. In June of 1993 Crystal Fields Lucero, as a single woman, purchased a mobile home. She financed this purchase, executing an installment contract which was subsequently assigned to Green Tree and which granted a security interest in the mobile home.

2. Green Tree perfected its security interest by means of a notation on the certificate of title filed with the Motor Vehicle Division of the State of New Mexico.

3. Crystal Fields Lucero and Jerry N. Lucero also signed, in conjunction with the purchase of the mobile home, a landlord's waiver.

4. Both the installment contract and the landlord's waiver contained language providing that the mobile home would remain personalty and would not become affixed to real property.

5. The mobile home was initially installed on concrete blocks on a piece of real property which the Luceros were purchasing under a real estate contract.

6. In April 1995, as part of an effort to sell the property, the Luceros installed the mobile home on a permanent foundation by embedding rebar into concrete pillars and welding the rebar to the mobile home frame.

7. The facts are in dispute as to whether the Luceros notified Green Tree that the mobile home was being affixed to the real property.

8. Green Tree did not make a fixture filing in connection with the mobile home.

9. The Luceros fell behind in their payments to Green Tree.

10. On September 6, 1995, the Luceros filed for Chapter 13 relief.

## DISCUSSION

The Court has previously ruled that the Luceros may not seek to avoid Green Tree's lien for their own benefit, because they have consented in writing to the security interest. This is in accordance with N.M.Stat.Ann. § 55–9–313(5)(a), which reads in pertinent part as follows:

> (5) A security interest in fixtures, whether or not perfected, has priority over the conflicting interest of an encumbrancer or owner of the real estate where:
>
> > (a) the encumbrancer or owner has consented in writing to the security interest
> > . . .

The Luceros have now taken the position that the Green Tree lien can still be avoided pursuant to the strong arm powers given to the trustee in § 544 of the Bankruptcy Code, either by themselves as debtors-in-possession or by joining the Chapter 13 trustee as a party plaintiff.

The Court faces the following questions:

1. Do the avoidance powers conferred by § 544 extend to trustees in Chapter 13 cases? If not, the inquiry goes no further.

2. If so, can chapter 13 debtors-in-possession step into the shoes of the trustee and accomplish avoidance on their own?

3. And, finally, has the Lucero mobile home become a "fixture" under New Mexico law, thereby making Green Tree's lien subject to avoidance?

*Avoidance Powers of Chapter 13 Trustees*

■ A majority of cases assume without discussion that the avoidance powers of § 544 extend to Chapter 13 trustees. *In re Bell,* 194 B.R. 192 (Bankr.S.D.Ill.1996); *United States v. Branch,* 170 B.R. 577 (E.D.N.C.1994); *In the Matter of Maddox,* 15 F.3d 1347 (U.S.Ct.App. 5th Cir.1994); *In the Matter of Cameron,* 151 B.R. 303 (Bankr. D.Conn.1993); *In re Perry,* 131 B.R. 763 (Bankr.D.Mass.1991). An omission in § 1302, which lists the duties of the Chapter 13 trustee, does raise a question regarding that authority. The Chapter 13 trustee duties in § 1302 are identified only by reference to various portions of § 704, a section which describes in detail the duties of a Chapter 7 trustee. One of the Chapter 7 trustee's duties—to collect the property of the estate—is not included as a duty of a Chapter 13 trustee, and an argument can be made that the avoidance powers are granted only to facilitate that collection process. If the drafters of the code did not intend for Chapter 13 trustees to be involved in the collection of property of the estate, perhaps it is logical, to assume that the long arm powers of § 544 likewise do not apply. A Chapter 13 case does not, after all, deal with the collection of existing property of the debtor but instead focuses on the debtor's future earnings.

Two other sections of the Bankruptcy Code, however, seem to settle the question. According to § 103(a), chapters 1, 3, and 5 of the code apply "in a case under chapter 7, 11, 12, or 13 of this title." The broad, inclusory language of this provision appears to make § 544 apply to a Chapter 13 trustee. Even more persuasive is § 546—Limitations on avoiding powers. This section provides, among other things, for a statute of limitations on avoidance actions. The time period is calculated in part by reference to "the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or *1302 of this title* . . ." (emphasis added). Clearly,

the Code would not be limiting the avoidance power of Chapter 13 trustee unless the trustees held such power. The Court finds that the avoidance powers of § 544 extend to Chapter 13 trustees.

### Avoidance powers of a Chapter 13 debtor

■ The rights and powers of a debtor in a Chapter 13 bankruptcy are set forth in § 1303, which reads as follows:

Subject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(*l*), of this title.

The rights and powers delineated in this section all pertain to a Chapter 13 debtor's ability to sell or lease property of the estate, certain conditions under which such sales are permissible, and the giving of adequate protection to parties in interest. No provision is made for the avoidance of liens; § 544 is not mentioned.

The historical and revision notes which follow § 1303 do include the following sentence: "The section does not imply that the debtor does not also possess other powers concurrently with the trustee." The note goes on to give, as an example, the debtor's ability to sue and be sued. Courts have sometimes used this comment as a basis for granting Chapter 13 debtors powers other than those specifically described in § 1303. *In re Suarez,* 182 B.R. 916 (Bankr.S.D.Fla. 1995); *In the Matter of Einoder,* 55 B.R. 319 (Bankr.N.D.Ill.1985); *In re Ottaviano,* 68 B.R. 238 (Bankr.D.Conn.1986); *In re Freeman,* 72 B.R. 850 (Bankr.E.D.Va.1987).

■ The better-reasoned cases, however, hold that if Congress had intended to grant avoidance powers to a Chapter 13 debtor, it could have explicitly done so. *In re Mast,* 79 B.R. 981 (Bankr.W.D.Mich.1987). Legislative history, especially floor comments, may augment but not amend a statute's straightforward language. *In re Bruce,* 96 B.R. 717 (Bankr.W.D.Tex.1989). The absence of the avoidance powers (and others) from the § 1303 list seems particularly compelling when comparison is made to § 1107

which grants "all the rights . . . and powers" of the trustee, with certain specific exceptions inapplicable here, to a Chapter 11 debtor-in-possession. See *In re Redditt,* 146 B.R. 693 (Bankr.S.D.Miss.1992). This Court declines to ascribe avoidance powers to a chapter 13 debtor-in-possession on the basis of a historical note, especially given the somewhat tortuous route required to make the determination that such powers are vested in the trustee.

### Mobile homes as "fixtures" under New Mexico law

■ Having determined that the Chapter 13 trustee is empowered to exercise avoidance powers, the Court must now decide whether Green Tree's lien can be avoided. This question rests on whether the Lucero's mobile home became a fixture for which a fixture filing by Green Tree was required for the perfection of its security interest. Green Tree's notation on the certificate of title filed with the Motor Vehicle Division is sufficient to perfect its security interest in the mobile home, so long as the mobile home remains "goods" and does not "become so related to particular real estate" that an interest in it arises under real estate law. N.M.Stat.Ann. § 55–9–313. In that case, a fixture filing is required in order to provide notice in the real estate records of the existence of the lien. *Id.* Because Green Tree did not make a fixture filing, its status as a secured creditor depends upon whether the Lucero's mobile home is characterized as a "fixture" or as "goods."

■ New Mexico law, in conformity with the majority of states, focuses upon intent, adaptation, and annexation in determining whether personal property has become so attached to real estate that an interest in that property arises under real estate law. *Kerman v. Swafford,* 101 N.M. 241, 680 P.2d 622 (1984); *In re Flores De New Mexico, Inc.,* 151 B.R. 571 (Bankr.D.N.M.1993). First, the goods must be affixed or annexed to the real estate; second, the affixed goods must be adapted to the use to which the real estate is put; and third, and of utmost importance, the person affixing the goods must

intend that the goods be permanently attached to the real estate.

The parties are in agreement that the record before the Court contains all facts relevant to a determination of the status of the Lucero mobile home as a fixture or as goods. The record shows that Mr. Lucero, a licensed general contractor, imbedded rebar in concrete pillars which had been buried into the ground. The frame of the mobile home was then welded to the rebar. The process was accomplished in a manner which, according to the undisputed statements contained in Mr. Lucero's affidavit, complied with all applicable state regulations and requirements for a permanent foundation system. An inspector examined the job after it was completed. Other factors which have been taken into consideration in determining whether or not a mobile home has become affixed to real estate—removal of wheels and axle, connection to utilities—had also occurred in this case. Based on the evidence before the Court, it seems clear that the Lucero mobile home was annexed to the real estate and that the first prong of the three-way test has been satisfied.

The second inquiry is whether the mobile home was adapted to the use to which real estate is put. It is undisputed that the Luceros' purpose in attaching the frame of the mobile home to the concrete/rebar foundation was to facilitate the sale of the property. The mobile home was being marketed as a unit with the lot on which it was located. This lot/mobile home combination became the "real estate" which was being offered for sale, and the Court finds the mobile home was expressly adapted to the use to which real estate is put.

Finally the Court looks to the Luceros' intent. On the one hand is the Luceros' desire to sell the mobile home and the underlying lot as a unit of real estate. From this the Court can infer a concurrent intent that the mobile home be permanently attached to the real estate. On the other hand are the documents—the installment contract and landlord's waiver—in which the Luceros expressly set forth their intention that the mobile home would not become affixed but would remain personalty. If the intent is clearly manifested, as by a declaration that the parties specifically agree that the goods will remain personalty and will not become fixtures, the majority of courts will hold that the property retains its chattel character, at least when the dispute is between the immediate parties, and probably as against all but subsequent good faith purchasers for value of the real estate. *Hawkland UCC Series,* § 2A–309:02.

Although there has been in fact no subsequent good faith purchaser for value of the Luceros' property, the Bankruptcy Code allows the trustee to step into that position. And the trustee, in that position, prevails over the terms of a side agreement which would have been unknown to an innocent buyer. *See In re Trestle Valley Recreation Area, Inc.,* 45 B.R. 458 (Bankr.N.D.1984) (while parties may by agreement fix status of property either as realty or personalty, such agreements have no effect as against third parties without notice); *McCarthy v. Bank,* 423 A.2d 1280 (Pa.Super.1980). From the perspective of a good faith purchaser without any knowledge of the Green Tree–Lucero agreements, the property would certainly look like real estate, and it would be reasonable for such a purchaser to investigate real estate records to determine the existence, or not, of liens upon the property. Accordingly, the Court finds that with respect to the chapter 13 trustee and pursuant to § 544(a)(3) of the Bankruptcy Code, the Luceros' mobile home became a "fixture" under New Mexico law and Green Tree's lien is subject to avoidance.

The chapter 13 trustee is the only party authorized to exercise the avoidance powers of § 544. A joint motion for an order adding the chapter 13 trustee as a party plaintiff was previously denied by the Court without prejudice, because at that time the chapter 13 plan provided for retention of the mobile home by the debtors pursuant to their homestead exemptions. The plan has since been modified, and any monies realized from the sale of the mobile home are to be distributed to creditors. Given the modification of the plan, the Court will allow the trustee 15 days in which to file a motion to be substituted as party plaintiff. If such a motion is filed,

summary judgment shall be entered in favor of the trustee. If such a motion is not filed, summary judgment shall be entered in favor of Green Tree.

## CONCLUSION

For the foregoing reasons, the Court shall enter an order (1) providing the chapter 13 trustee with a period of 15 days in which to file a motion to be substituted as party plaintiff, and (2) deferring the entry of summary judgment until that time period has elapsed. This opinion constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## ORDER

THIS MATTER came before the Court upon the summary judgment motions of the debtors and of Green Tree Financial Servicing Corporation for a determination of the validity and perfection of Green Tree's lien upon the debtors' mobile home. The Court having heard the arguments of counsel, considered the briefs and pleadings, entered a Memorandum Opinion, and being otherwise fully advised HEREBY ORDERS as follows:

1. The chapter 13 trustee shall have 15 days from the date of entry of this order in which to file a motion to be substituted as party plaintiff in this action.

2. If the trustee files a motion to be substituted as party plaintiff within 15 days of the date of entry of this order and the motion is granted, summary judgment shall be entered in favor of the trustee.

3. If the trustee does not file a motion to be substituted as party plaintiff within 15 days of the date of entry of this order, summary judgment shall be entered in favor of Green Tree Financial Servicing Corporation.